# RODGERS *v*. UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 317. Argued February 26, 1902.—Decided April 7, 1902.

Where there are two statutes, the earlier special and the later general, (the terms of the general being broad enough to include the matter provided for in the special,) the fact that the one is special and the other is general creates a presumption that the special is to be considered as remaining an exception to the general, and the general will not be understood as repealing the special, unless a repeal is expressly named, or unless the provisions of the general are manifestly inconsistent with those of the special.

Section 7 of the act of March 3, 1899, c. 413, 30 Stat. 1004, in effect abolishes the rank of Commodore, at least as far as respects the active list of the line of the Navy, and lifts those in that rank to that of Rear Admiral. Clearly that was a special provision in respect to which the attention of Congress was at the time directed, and when in section 13 Congress prescribed a general rule for the salaries of naval officers, such general rule cannot be understood as repealing that special provision.

That section fixed the amount of the salary but did not affect any general provisions of law affecting a difference between salary while at sea and while on shore.

THIS is an appeal from the Court of Claims. The claimant, Frederick Rodgers, a Rear Admiral of the line of the Navy, brought suit to recover the sum of $3358.13, which he claims as the balance due him on account of pay and allowances for the period between March 3, 1899, and March 2, 1901. The claim is founded upon the law of Congress, known as the "Navy Personnel Act," which was approved on March 3, 1899, c. 413, and entitled "An act to reorganize and increase the efficiency of the personnel of the Navy and Marine Corps of the United States." 30 Stat. 1004.

The applicable sections are seven and thirteen, which, omitting irrelevant portions, read :

"SEC. 7. That the active list of the line of the Navy, as constituted by section one of this act, shall be composed of eighteen rear admirals, seventy captains, one hundred and twelve commanders, one hundred and seventy lieutenant commanders, three hundred lieutenants, and not more than a total of three hundred and fifty lieutenants (junior grade) and ensigns : *Provided*, That each rear admiral embraced in the nine lower numbers of that grade shall receive the same pay and allowance as are now allowed a brigadier general in the Army. Officers, after performing three years' service in the grade of ensign, shall, after passing the examinations now required by law, be eligible to promotion to the grade of lieutenant (junior grade): *Provided*, That when the office of chief of bureau is filled by an officer below the rank of rear admiral, said officer shall, while holding said office, have the rank of rear admiral and receive the same pay and allowance as are now allowed a brigadier general in the Army : *And provided further*, That nothing

contained in this section shall be construed to prevent the retirement of officers who now have the rank or relative rank of commodore with the rank and pay of that grade.

"SEC. 13. That, after June thirtieth, eighteen hundred and ninety-nine, commissioned officers of the line of the Navy and of the Medical and Pay Corps shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law for the officers of corresponding rank in the Army: *Provided,* That such officers when on shore shall receive the allowances, but fifteen per centum less pay than when on sea duty; but this provision shall not apply to warrant officers commissioned under section twelve of this act: *Provided, further,* That when naval officers are detailed for shore duty beyond seas they shall receive the same pay and allowances as are or may be provided by or in pursuance of law for officers of the Army detailed for duty in similar places. . . . *And provided further,* That no provision of this act shall operate to reduce the present pay of any commissioned officer now in the Navy; and in any case in which the pay of such an officer would otherwise be reduced he shall continue to receive pay according to existing law: *And provided further,* That nothing in this act shall operate to increase or reduce the pay of any officer now on the retired list of the Navy."

By section 1466 of the Revised Statutes of the United States it was, among other things, provided:

"SEC. 1466. The relative rank between officers of the Navy, whether on the active or retired list, and officers of the Army, shall be as follows, lineal rank only being considered:

\*        \*        \*        \*        \*        \*        \*        \*

"Rear admirals with major generals.

"Commodores with brigadier generals."

"Captains with colonels."

The findings show that the claimant was appointed and commissioned a rear admiral on March 3, 1899. From that date until March 2, 1901, he was one of the rear admirals "embraced in the nine lower numbers of that grade." He served on shore from March 3, 1899, to February 13, 1901, and for the rest of the time at sea. While at sea he received the same pay as was

"allowed a brigadier general in the army," and while on shore he received pay at the same rate less fifteen per centum, together with commutation in lieu of allowance of quarters. Judgment was rendered in favor of the United States, 36 C. Cl. 266, from which judgment the claimant took this appeal.

*Mr. James H. Hayden* for appellant. *Mr. Joseph K. Mc-Cammon* was on his brief.

*Mr. Assistant Attorney General Pradt* for appellee. *Mr. John Q. Thompson* was on his brief.

MR. JUSTICE BREWER, after making the above statement, delivered the opinion of the court.

This case involves a mere question of statutory construction. The matter of military and naval salaries is one exclusively within the control of Congress. The courts may neither increase nor decrease them, correct any supposed inequalities, nor in any manner set aside or modify the action of the legislative branch of the Government in respect thereto. If there be inequality, injustice, it can be corrected alone by Congress, and the courts may not interfere.

The primary rule of statutory construction is, of course, to give effect to the intention of the legislature. Whenever that is apparent it dominates and interprets the language used. But when the intent is a debatable question, and there is nothing on the face of the statute which clearly indicates such intent, there are certain minor and subsidiary rules by which courts are guided in determining the true construction.

In the case at bar neither the words of the statute nor the circumstances and conditions of this legislation make perfectly clear the intent of Congress. If we look alone upon section 13, we may well conclude that Congress had one thought in its mind, while if we turn to section 7 another and somewhat different intent is apparent. Section 13 suggests a complete parallel in the matter of pay between all the officers of the Navy and those of the Army according to their several ranks. Sec-

tion 7, on the other hand, points to a special exception in respect to one half the officers of a certain rank in the Navy. The ingenious and plausible arguments made by counsel on the respective sides clearly show that it is a debatable question whether Congress intended that after the first of July, 1899, there should be only one uniform rule controlling the pay of all the respective officers of the Army and the Navy, or whether as to one half of the rear admirals a different rule was contemplated. Under those circumstances of doubt we turn to other rules of statutory construction.

Before noticing them it is well to understand exactly the contentions of the parties. The claimant insists that the first proviso in section 7 establishes a complete but temporary rule for the payment of the nine lower members of the grade of rear admiral; that no provisions of other sections of this statute, or of any other statute, limit or qualify the right of the nine junior rear admirals to the full pay given by statute to a brigadier general. On the other hand, the Government contends that the proviso is subject to the general rule which obtains in respect to all other naval officers, of a fifteen per cent difference between the pay when on shore duty and that when at sea. Again, the claimant insists that by section 13, after the 30th day of June, 1899, all rear admirals became entitled to the pay and allowances of major generals in the army, and that the proviso in section 7, in respect to the nine junior rear admirals, was temporary in its nature, and expired on the 30th of June, 1899; while the Government contends that the distinction between the nine senior and the nine junior rear admirals is a permanent provision, and did not cease to have force on the 30th of June, 1899.

It is a canon of statutory construction that a later statute, general in its terms and not expressly repealing a prior special statute, will ordinarily not affect the special provisions of such earlier statute. In other words, where there are two statutes, the earlier special and the later general—the terms of the general broad enough to include the matter provided for in the special—the fact that the one is special and the other is general creates a presumption that the special is to be considered as re-

maining an exception to the general, and the general will not be understood as repealing the special, unless a repeal is expressly named, or unless the provisions of the general are manifestly inconsistent with those of the special. In *Ex parte Crow Dog,* 109 U. S. 556, 570, this court said:

" The language of the exception is special and express; the words relied on as a repeal are general and inconclusive. The rule is *generalia specialibus non derogant.* ' The general principle to be applied,' said Bovill, C. J., in *Thorpe* v. *Adams,* (L. R. 6 C. P. 135,) ' to the construction of acts of Parliament is that a general act is not to be construed to repeal a previous particular act, unless there is some express reference to the previous legislation on the subject, or unless there is a necessary inconsistency in the two acts standing together.' ' And the reason is,' said Wood, V. C., in *Fitzgerald* v. *Champenys,* (30 L. J. N. S. Eq. 782; 2 Johns. & Hem. 31, 54,) ' that the legislature having had its attention directed to a special subject, and having observed all the circumstances of the case and provided for them, does not intend by a general enactment afterwards to derogate from its own act when it makes no special mention of its intention so to do.' "

In Black on Interpretation of Laws, 116, the proposition is thus stated:

" As a corollary from the doctrine that implied repeals are not favored, it has come to be an established rule in the construction of statutes that a subsequent act, treating a subject in general terms and not expressly contradicting the provisions of a prior special statute, is not to be considered as intended to affect the more particular and specific provisions of the earlier act, unless it is absolutely necessary so to construe it in order to give its words any meaning at all."

So, in Sedgwick on the Construction of Statutory and Constitutional Law, the author observes, on page 98, with respect to this rule:

" The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms or treating the subject in a general manner and not expressly

contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all."

And in *Crane v. Reeder*, 22 Michigan, 322, 334, Mr. Justice Christiancy, speaking for the Supreme Court of that State, said :

" Where there are two acts or provisions, one of which is special and particular, and certainly includes the matter in question, and the other general, which, if standing alone, would include the same matter and thus conflict with the special act or provision, the special must be taken as intended to constitute an exception to the general act or provision, especially when such general and special acts or provisions are contemporaneous, as the legislature is not to be presumed to have intended a conflict."

Both the text books and the opinion just quoted cite many supporting authorities.

In the light of this canon, how should these two sections be construed? Section 7 in effect abolishes the rank of commodore, at least so far as respects the active list of the line of the Navy, and lifts those in that rank to that of rear admiral. The attention of Congress was thus directed to such change, and the proper accompanying provisions in respect to salary and otherwise, and it declared that the lower nine rear admirals, they who were by the section lifted to that rank, should receive a particular salary. Clearly that was a special provision in respect to a matter to which the attention of Congress was at the time directed. If another statute had been passed at a subsequent or on the same day making general provision for the salaries of naval officers, clearly the canon to which we have referred would apply. *A fortiori*, when the subsequent general provision is in the same statute it should be held applicable. So, when in section 13, Congress prescribed a general rule for the salaries of naval officers, such general rule cannot within the scope of this canon be understood as repealing the special provision in the prior section, but the special provision must be taken as an exception to and limitation of the general rule.

But it is said that harmony between the two may be obtained by limiting the operation of the special provision to the period between the passage of the act and the 30th of June following. But that necessitates adding something to the words of the special provision, so that it shall read that from the date of the act until the 30th of June following such should be the rule in respect to the salaries of the recently promoted commodores. But the same harmony can be obtained by adding to the general provision a clause like this: Except in respect to the nine lower numbers of the grade of rear admiral. In either case the harmony is secured by adding some words of qualification, and the rule, as we have seen, is to the effect that the additional words of qualification are to be put to the general provision rather than to the special.

It is urged that the provision in section 7 was intended to merely fill out the present fiscal year, and that Congress meant by this legislation to start the new fiscal year, July 1, 1899, with one general rule of equality between the pay of officers of the Navy and that of officers of the Army. There might have been some force in this suggestion if the pay of the nine lower rear admirals had been continued through the balance of the year the same as it was at the date of the passage of the act. But all of them, whether commodores or captains, were by this special provision given an increase of pay. So Congress was not simply continuing salaries, but was making special provision for the nine lower numbers of the grade of rear admirals, giving them an increase of pay over that which they had previously received.

Another matter worthy of notice is this : Prior to the act of March 3, 1899, the corresponding ranks of officers of the Navy and the Army were rear admiral and major general, commodore and brigadier general, captain and colonel. By that act the rank of commodore was abolished, although that of brigadier general was undisturbed. No change was made in the relative rank of captain and colonel, or of rear admiral and major general, but the legislation left one rank in the Army to which there was no corresponding rank in the Navy. The statute in effect lifted the rank in the Navy which was corresponding to

that of brigadier general in the Army to that of rear admiral, and corresponding with that of major general in the Army. The individuals thus raised in rank were not so raised on account of distinguished services or for any personal reason, but simply in consequence of the abolition of the official rank they had held. Is it unreasonable to believe that Congress thought it unwise to give to those officers (who had neither by length of service or by personal distinction become entitled to the position of rear admiral, as it had stood in the past) all the benefits of such position? Would it be unnatural for Congress to bear in mind those who by length of service or by personal distinction had already earned the position, and provide that in, at least, the matter of pay there should be some recognition of the fact? Again, is it unreasonable to believe that Congress intended that those officers whose past services placed them according to the prior relative rank side by side with brigadier generals of the Army, should not by a mere change of statute be given a benefit in salary which was not at the same time accorded to brigadier generals in the Army? May not this explain its action in so dividing the rear admirals into two classes—one composed substantially of former rear admirals, equal both in rank and pay with major generals in the Army, and the other of those who in the past were only commodores, to whom was given the rank of rear admirals, but the pay of brigadier generals in the Army?

Still another matter may be mentioned. The second proviso of section 7 reads:

"*Provided,* That when the office of chief of bureau is filled by an officer below the rank of rear admiral, said officer shall, while holding said office, have the rank of rear admiral and receive the same pay and allowance as are now allowed a brigadier general in the army."

There is no similar clause in section 13. Why should Congress in section 7 make provision for the rank and pay of certain officers who during the ensuing four months might be charged with certain duties, and omit any such provision in prescribing salaries generally and permanently? Is it not reasonable to believe that Congress intended this as a special pro-

vision which should continue after the 30th of June, 1899, and as a permanent rule for the cases named?

These considerations certainly tend to support the conclusion which follows from enforcing the well-recognized canon of construction in respect to special and general statutes. We think the Court of Claims was correct when it said:

"Section 13 is in general terms, and the language there used does not indicate that it was the intention of the Congress to abrogate the special provision made in section 7 for the rear admirals 'embraced in the nine lower numbers of that grade;' and special provision having been made for them it cannot be held that a subsequent general statute, much less in the same act, was intended to alter or repeal the special provision so made."

The further question is whether the provision in section 7, that the rear admirals embraced in the nine lower numbers of that grade should receive such pay and allowances as were given to brigadier generals, was intended to be absolute and exclusive, practically ignoring the general rule in respect to naval service of a difference between the pay of officers doing shore duty and that of those at sea? When there has been a long-established rule of difference in the compensation for the two kinds of services; when that rule is expressly recognized and continued in this same statute, as it is in section 13, when it is not in terms excluded in section 7, it would be going too far to hold it inapplicable to the salary provided for by section 7. In other words, it is not to be believed that Congress by that section carved out a salary which in all respects ignored the general rules pertaining to salaries of naval officers. It is rather to be believed that only the amount was fixed, and that otherwise it was to be in harmony with and subordinate to any and all general provisions. We are of opinion that the Court of Claims was right in its conclusions in this respect.

It may be conceded that the questions we have been considering are not free from doubt, and much may be said in favor of the view opposed to that we have taken. Inasmuch as Congress has full control over the matter of salaries it can at any time appropriate to these officers such a sum as will make their

salaries that which they contend was intended by the act of March 3, 1899. It is not a case in which the judicial decision must necessarily be a finality, but one in which there is full power on the part of Congress to correct any mistake which may have been made.

The judgment of the Court of Claims is

*Affirmed.*

Mr. Justice Gray took no part in the decision of this case.