SAURÍ & SUBIRÁ, PETITIONERS, v. SEPÚLVEDA, DISTRICT JUDGE, RESPONDENT (PEOPLE, INTERVENOR).

## PETITION for a Writ of Certiorari to the Judge of the District Court of Ponce in an Action for the Recovery of Taxes Paid Under Protest.

No. 173.—Decided May 12, 1917.

REFUND OF TAXES—TAXES PAID UNDER PROTEST—SUMMONS—REPEAL.—In passing Act No. 35 of 1911, authorizing actions in form against the Treasurer of Porto Rico for the recovery of taxes paid under protest, the mind of the Legislature was directed in a general way to the subject outlined in the title and to the matters expressly covered in the body of the bill rather than to the detail of process; and if the said act repealed the requirements of service upon the Governor contained in section 93 of the Code of Civil Procedure, it was by bare implication.

ID.—ID.—ACTIONS AGAINST THE PEOPLE—SUMMONS.—Act No. 76 of 1916 manifestly includes an action to recover taxes paid under protest, and section 13 thereof is sufficient to repeal by implication any implied dispensation with service upon the Governor contained in Act No. 35 of 1911; for as the actions against the Treasurer authorized by the latter act are undoubtedly actions against The People of Porto Rico, a continuance in force of the implied repeal of subdivision 5 of section 93 of the Code of Civil Procedure would contradict the plain terms of the later expression of the legislative will requiring service upon the Governor and the Attorney General, which requirement is in harmony with the procedure originally prescribed by the code.

ID.—ID.—CONSENT OF PEOPLE TO BE SUED—SUMMONS.—Act No. 35 of 1911 was a formal consent by The People of Porto Rico to be sued for the recovery of taxes paid under protest; and except for the specific ratification of such express consent contained in section 10 of the law of 1916, the whole of the former act would have been repealed by section 2 of the latter, hence the former act is continued in force subject only to the restrictions and limitations of the latter.

ID.—ID.—ACTIONS AGAINST PEOPLE—ACTIONS AGAINST OFFICIALS.—The Act of 1916 does not show the remotest inference of any intention on the part of the lawmakers to exempt from the requirement as to service of process in any "action or proceeding against The People of Porto Rico" those very actions or proceedings when in form against any official in his representative capacity, and no exception should be read into section 13 of the said act which was never in the minds of its framers. *Ubi lex non distinguit nec nos distinguere debemus.*

ID.—ID.—ACTIONS AGAINST PEOPLE—SUMMONS.—The Acts of 1911 and 1916 can stand together in harmony in so far as concerns the form of an action to recover taxes paid under protest, and they should be construed, each in connection with the other, to require triplicate service of the summons upon the Governor, the Attorney General and the Treasurer.

The facts are stated in the opinion.

*Mr. A. F. Castro* for the petitioners.

The respondent did not appear.

*Mr. Jaime Sifre, Fiscal* at large, for the intervenor.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

This is a suit brought by a taxpayer against the Treasurer of Porto Rico in accordance with the provisions of an act entitled "An Act providing for the payment of taxes under protest, establishing a procedure for the recovery thereof, and for other purposes," approved March 9, 1911.

Defendant moved to quash the summons for reasons stated as follows:

"That although it is said in the complaint that this suit is brought by Saurí & Subirá, plaintiffs, against Charles F. Hill, Assistant Treasurer, now Acting Treasurer of Porto Rico, the action, in point of fact, is established against The People of Porto Rico (*Union Central Life Ins. Co.* v. *Gromer,* 20 P. R. R. 80).

"That as appears from the return made by the Marshal of the District Court of San Juan of the summons in this case, the same was served upon Charles F. Hill, Assistant Treasurer, now Acting Treasurer of Porto Rico.

"That in accordance with section 13 of Act No. 76, approved April 13, 1916, to authorize suits against The People of Porto Rico, 'process and all pleadings, notices and papers in connection with any action or proceeding against The People of Porto Rico shall be served upon the Governor and the Attorney General in the manner provided by law'; and as shown by the summons in this case none of these requirements were complied with."

The ruling of the district court sustaining this motion is before us by certiorari.

"Suits against officers of State as representing the State in action and liability, and in which the State, although not a party to the record, is the real party against which relief is sought and in which a judgment for plaintiff, although nominally against defendant as an individual, could operate to control the action of the State or subject it to liability, are suits against the State." 36 Cyc. 915.

"In a suit against the State, or to which a State is a party, process should be served upon the Governor and Attorney General

·of the State, and, in the absence of special statutory provisions, it seems that service upon either one ·of these officers alone is ·sufficient,''

although it has ·been somewhat broadly stated that

''where the State is not a party to the record, process should be served upon the officer ·defending in behalf of the State.'' 36 Cyc. 920.''

.In passing, reference may be made without comment to *Poydras de la Lande* v. *The Treasurer of Louisiana* (Supreme Court 1854), 17 How. 1, the only case cited in support of the proposition last mentioned, as a valuable aid to the true interpretation of its meaning.

But we are not now concerned with general principles beyond the possible advantage of such faint sidelight as the same may shed upon the real question involved herein, which is solely and exclusively one of statutory construction.

''The consent of the State to be sued is entirely voluntary on its part, and it may therefore prescribe the cases in which and the terms and conditions upon which it may be sued, and how the suit shall be conducted; and the State can be sued only in the cases, manner, place, and courts prescribed by it, and one who seeks to avail himself of such consent must pursue the remedy as it is provided by law, and must fully comply with the prescribed terms and conditions, and it is the duty of the courts to see that the prescribed methods of procedure are followed. Where a State consents to be sued in its own courts it can be bound only to the extent of its submission to the jurisdiction, which sometimes extends only to an adjudication of plaintiff's claim, without any provision for its enforcement by judicial process, in which case no effective judgment .can be rendered against the State, and the only remedy is through an appropriation by the legislature in satisfaction of the court's ·award. When, however, a State submits itself without reservation to the jurisdiction of the court, that jurisdiction may be used to give full effect to whatever the State, by its act of submission, has allowed to be done; and in any case it is the duty of the court to look carefully into the terms of the submission, and render judgment accordingly. By consenting to be sued a State simply waives its

immunity. It does not thereby concede its liability to plaintiff, or create any cause of action in his favor, or extend its liability to any cause not previously recognized. It merely gives a remedy to enforce a pre-existing liability and submits itself to the jurisdiction of the court, subject to its right to interpose any lawful defense." 36 Cyc. 913.

Section 89 of the Code of Civil Procedure provides, among other things, that the summons must be directed to the defendant and must contain the names of the parties to the action, a statement of the nature thereof and a direction that the defendant appear and answer, coupled with a warning as to probable default in the event of failure so to do.

Section 90 says:

"If the summons is returned without being served on any or all of the defendants, the secretary, upon the demand of the plaintiff, may issue an alias summons, in the same form as the original."

Section 93 specifies that if the suit is against the Government of Porto Rico the summons must be served upon the Governor by delivery of a copy thereof.

Whether or not from 1911 to 1916 service upon the Treasurer alone was sufficient in an action of this kind, is not a vital question in the view we take of this case.

And for the purposes of this opinion, it may be concluded, although here also there is much room for argument, that the law of 1911 as compared with that of 1916 is a "special act" within the meaning of the rule *generalia specialibus non derogant.*

"It is a well established rule that general and specific provisions in apparent contradiction, whether in the same or different statutes, and without regard to priority of enactment, may subsist together, the specific qualifying and supplying exceptions to the general." Preliminary Article on Statutes and Statutory Construction, 1 Federal Statutes Annotated (2d ed.), p. 165 § 142.

In a leading case, *Rogers* v. *The United States,* 185 U. S.

83, the Supreme Court, speaking through Mr. Justice Brewer, said (italics ours):

"It is a canon of statutory construction that a later statute, general in its terms and not expressly repealing a prior special statute, will ordinarily not affect the special provisions of such earlier statute. In other words, where there are two statutes, the earlier special and the later general—the terms of the general broad enough to include the matter provided for in the special—the fact that the one is special and the other is general creates a presumption that the special is to be considered as remaining an exception to the general, and the general will not be understood as repealing the special, unless a repeal is expressly named, or *unless the provisions of the general are manifestly inconsistent with those of the special.* In *Ex parte Crow Dog,* 109 U. S. 556, 570, this court said:

" '*The language of the exception is special and express; the words relied on as a repeal are general and inconclusive.* The rule is *generalia specialibus non derogant.* "The general principle to be applied," said Bovil, C. J., in *Thorpe v. Adams,* (L. R. 6 C. P. 135,) "to the construction of acts of Parliament is that a general act is not to be construed to repeal a previous particular act, unless there is some express reference to the previous legislation on the subject, or *unless there is a necessary inconsistency in the two acts standing together.*" "And the reason is," said Wood, V. C., in *Fitzgerald v. Champenys,* (30 L. J. N. S. Ep. 782; 2 Johns. & Hem. 31, 54,) "that the legislature having had its attention directed to a special subject, and *having observed all the circumstances of the case and provided for them,* does not intend by a general enactment afterwards to derogate from its own act when it makes no special mention of its intention so to do." '

·"In Black on Interpretation of Laws, 116, the proposition is· thus stated:

" 'As a corollary from the doctrine that implied repeals are not favored, it has come to be an established rule in the construction of statutes that a subsequent act, treating a subject in general terms and not expressly contradicting the provisions of a prior special statute, is not to be considered as intended to affect *the more particular and specific provisions of the earlier act,* unless it is absolutely necessary so to construe it in order to give its words any meaning at all.'

"So, in Sedgwick on the Construction of Statutory and Constitu-

tional Law, the author observes, on page 98, with respect to this rule:

" 'The reason and philosophy of the rule is, that *when the mind of the legislator has been turned to the details of a subject, and he has acted upon it,* a subsequent statute in general terms or treating the subject in a general manner and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such construction, in order that its words shall have any meaning at all.'

"And in *Crane* v. *Reeder,* 22 Michigan, 322, 334, Mr. Justice Christiancy, speaking for the Supreme Court of that State, said:

" 'Where there are two acts or provisions, one of which is special and particular, and *certainly includes the matter in question,* and the other general, which, if standing alone, would include the same matter and thus conflict with the special act or provision, the special must be taken as intended to constitute an exception to the general act or provision, especially when such general and special acts or provisions are contemporaneous, as the legislature is not to be presumed to have intended a conflict.' "

On the other hand:

"Though two acts are not in all respects repugnant, if the later act covers the subject of the earlier, and embraces new provisions which plainly show that it was a substitute for the first, it will operate as a repeal. And when the revising statute covers the whole subject-matter of antecedent statutes, it impliedly repeals the earlier enactments, unless there is something in the nature of the subject-matter of the revising statute to indicate a contrary intention  *  *  *. Where an amendatory statute purporting to amend a statute which has already been amended covers the entire subject-matter of the prior amendment, the latter is repealed by implication." Preliminary article, *supra,* p. 167, § 144.

Also:

"When the legislature has clearly laid down a rule for one class of cases, it is not readily to be supposed that in its choice of words and phrases, or in the enactment of various provisions in the same act, it has prescribed a different rule for another class of cases within the same reason as the first; a construction which will avoid such senseless discrimination should be adopted where the meaning

of the statute as evidenced by its language is debatable. This is simply the general principle that all statutes should receive a reasonable construction stated in more concrete form and it is applied with great persuasiveness in very many cases. Courts should strive to avoid imputation of a design to distinguish between cases upon 'a course of reasoning too unsubstantial and too finely drawn for the regulation of human action.' " Preliminary article, *supra,* p. 103, § 76.

Again:

"Where a statute is repealed and its provisions are substantially re-enacted in the repealing statute, the latter is held to be substituted in the place of the old one, and to continue in force, with modifications the provisions of the old act, instead of abrogating or annulling them and re-enacting the same as a new and original act. In the leading federal case on this subject an action was brought to recover pilotage fees allowed by statute, which statute was repealed and substantially re-enacted during the pendency of the action, and it was held that the new statute did not impair the right to prosecute the action to affect." Preliminary article, *supra,* § 148.

"Generally speaking, where a statute is amended 'so as to read as follows,' or is re-enacted with changes, or is in terms repealed and simultaneously re-enacted with changes, the amendatory or re-enacting act becomes a substitute for the original, which then ceases to have the force and effect of an independent enactment; but this does not mean that the original is abrogated for all purposes, or that everything in the later statute is to be regarded as if first enacted therein. On the contrary the better and prevailing rule is that so much of the original as is repeated in the later statute without substantial change in other portions, as also any matter which is entirely new, is operative as new legislation." *Great Northern Ry. Co.* v. *United States,* 155 Fed. Rep. 948.

In passing the law of 1911 the mind of the legislature was directed in a general way to the subject outlined in the title and to the matters expressly covered in the body of the bill rather than to the detail of process, as to which not a word is said. If the requirement of service upon the Governor contained in section 93 of the Code of Civil Procedure was repealed at all, it was by bare implication from the authorization of an action in form against the Treasurer.

The law of 1916 is entitled "An Act to authorize suits against the People of Porto Rico."

The district courts are authorized to entertain such suits in the following cases:

"(*a*) Actions for damages based upon contracts entered into after this Act takes effect.

"(*b*) Actions to recover real or personal property or an interest therein, where the cause of action arises after the passage of this Act; *Provided,* That no recovery shall be had for any damages occasioned by The People of Porto Rico prior to the time of action brought."

Sections 2 and 10 read as follows:

"Section 2.—No action can be brought against The People of Porto Rico unless consent thereto is expressly included within the provisions of this Act, and every consent, express or implied, given by The People of Porto Rico and not expressly included herein, is hereby revoked."

"Section 10.—There shall be no remedy in any case for the collection of claims against The People of Porto Rico other than that provided by this Act, and those which are now specifically authorized by the Civil Code or by acts of the Legislative Assembly; *Provided, however,* That all such actions shall be brought only in the Insular district courts."

Section 13 is copied verbatim in the motion to quash, *supra.* Manifestly, on its face it includes an action of this kind and is categorically sufficient to repeal by implication any implied dispensation with service upon the Governor contained in the law of 1911; for if the suit against the Treasurer authorized by the law last mentioned is an "action or proceeding against The People of Porto Rico," as beyond all cavil it is, and as this court has held it to be (*Union Central Life Insurance Company v. Gromer,* 20 P. R. R. 80), then to continue in force such implied repeal of subdivision 5 of section 93 of the Code would to that extent contradict the plain and unmistakable terms of the latest unqualified expression of the legislative will in this regard.

The policy of the law of 1916, as plainly evinced in section 13, construed in connection with the general scope and purpose of the Act as indicated in the title and in the context, is, by requiring in all litigation in which the Government is the real defendant, whatever the form of proceeding, service of notice upon the Governor and upon the Attorney-General, to anticipate if not to eliminate the red tape of routine endorsements and official communications through regular administrative channels, to facilitate prompt attention to the question of defense by the proper representatives of the Government and to expedite the course of the proceeding. That policy is in full harmony with the procedure originally prescribed by the code and is based upon sound common sense. Not only does it work no serious hardship, nor even any great inconvenience to the plaintiff, but inures to his benefit, in so far as it tends to enable the Government to appear and answer or otherwise plead within the statutory period or at least without unnecessary delay.

The contention that the present proceeding, although in fact and in substance an action against The People of Porto Rico, is in form against the Treasurer of Porto Rico, simply draws a superficial distinction, without establishing any fundamental difference. It is not, nor can it be, urged that prior to 1911 a suit of this kind, or any suit the result of which, if successful, would be to transfer money from the Insular Treasury into the pockets of plaintiff, could have been maintained against the Treasurer of Porto Rico upon the theory that such a suit, being in form against the Treasurer, is not an action against The People of Porto Rico. The law of 1911 is a formal consent by The People of Porto Rico to be sued for the recovery of taxes paid under protest. Except for the specific recognition and ratification of such consent contained in section 10 of the law of 1916, unquestionably the whole of the law of 1911 would have been repealed by the sweeping terms of section 2 of the later enactment. Indeed, it would seem much more accurate, although somewhat para-

doxical, to say that the only logical effect of the two sections construed together in the order in which they occur in the text is to operate a simultaneous repeal and re-enactment or continuation of the law of 1911, subject, however, to the restrictions, limitations and modifications indicated in the context.

Certainly it cannot be contended that the legislature in 1916 did not have in mind the law of 1911, and to say that suits previously authorized in form against the Treasurer or any other officer of the Government, in his representative capacity, were not intended to be included in the provisions of section 13, would be simply to annex thereto, by judicial legislation, a proviso that the legislature in its wisdom did not see fit to add.

There is not a line, nor a word, nor a syllable, either in section 13 itself or in any part of the law of 1916, upon which to hang the remotest inference of any intention whatever on the part of the lawmaker to exempt from the requirement as to service of process in "any action or proceeding against The People of Porto Rico" those very actions or proceedings, when in form against any officer in his representative capacity, and we should not so misapply any known rule of construction as to read into that section an exception which was never in the mind of its framers. *Ubi lex non distinguit nec nos distinguere debemus,* although in the circumstances it seems much too mild a maxim, is a sufficient answer to the argument of appellant herein.

We may mention our indebtedness for a parity of reasoning as to much of what has been said upon this phase of the case to an excellent contribution to the April number of *Law Notes,* under the heading "Appellate Review by United States Supreme Court Limited to Three Months," by Charles C. Moore, author of the preliminary article to Federal Statutes Annotated, from which we have quoted so freely.

But it can hardly be said that the question of repeal by implication is necessarily involved in this case, and perhaps

more stress has been laid thereon than can be justified by the actual situation. The form of the action authorized in 1911 is not affected at all by the law of 1916, which neither in letter nor in spirit negatives either the idea of a suit in form against the Treasurer or the incidental service of summons upon him, if such service be a necessary consequence flowing from the form of the action. Its provisions as to process are affirmative, not negative; cumulative and complementary, not derogatory. Both statutes can stand together in perfect harmony in so far as this feature is concerned and should be construed, each in connection with the other, to require a triplicate service of the summons upon the Governor, the Attorney General and the Treasurer, instead of upon the Treasurer alone or upon the Governor and the Treasurer, as the case may have been prior to the later enactment.

The order of the district court quashing the summons served on the Treasurer and requiring an amended complaint should be annulled and the ruling upon which such order was based in so far as it holds service upon the Governor and Treasurer to be necessary should be affirmed.

*Petition granted.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.