STATE v. JIM GETTYS ET AL.

(Filed 18 May, 1921.)

**1. Statutes—General Laws—Special Acts—Repeal—Drainage Districts.**

Where a special local statute for the formation and operation of a drainage district is complete in itself in all its details, a general law expressing itself applicable to all such drainage districts in the State, adding further duties and making the failure of the commissioners to file certain reports an indictable offense, C. S., 5374, 5375, will not be construed to apply unless special reference is made to the special local act.

**2. Same—Consolidated Statutes.**

The Consolidated Statutes were compiled under authority of ch. 252, Laws 1917, for "collecting and revising the public statutes of the State," and unless specifically referred to, a private local statute, complete in itself, is not affected unless specifically mentioned therein.

**3. Same.**

Where a public-local law is complete in all of its details in establishing and maintaining a special drainage district, and requires the commissioners to keep "a perfect record of all dealings and transactions," this record is subject to inspection by all interested in the district; and C. S., 5374-5, subsequently enacted, which, among other things, makes it an indictable offense for the failure of the commissioners to make certain reports and to publish them, has no application, especially as C. S., 5381, provides that the subchapter on Drainage Districts "shall not repeal or change local drainage laws already enacted."

CLARK, C. J., dissenting; STACY, J., concurring in the dissenting opinion.

APPEAL by plaintiff from *Lane, J.,* at the February Special Term, 1921, of BURKE.

This is an indictment against the defendants, as commissioners of Muddy Creek Drainage District, for failure to file certain reports and to publish the same as required by secs. 5374 and 5375 of the Consolidated Statutes.

The drainage district was formed and organized under chapter 348, Public-Local Laws 1913.

A motion to quash the indictment was allowed, and the State appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Avery & Ervin for defendants.*

ALLEN, J.   It is made the duty, by secs. 5374 and 5375 of Consolidated Statutes, "of the commissioners of all drainage districts organized under the provisions" of the laws of North Carolina to file and publish the statements of receipts and expenditures set out in the indictment, and a failure to do so is indictable under sec. 5376.

This language of the statute, saying, as it does, "commissioners of all drainage districts," is sufficiently broad and comprehensive to include commissioners of all drainage districts organized under special acts, but the language must be understood and construed in connection with the subjects then under consideration by the General Assembly.

The Consolidated Statutes was authorized by chapter 252, Laws 1917, to provide "for the compiling, collating, and revising of the public statutes of the State of North Carolina," and unless mentioned expressly or by necessary implication it was not the purpose of the Legislature to deal with special or private acts.

In the compilation of the statutes, chapter 94, covering fifty-four pages, is devoted to State drainage laws, under which drainage districts may be established in any part of the State, and the sections under which the defendants are indicted are a part of this chapter.

The natural and reasonable inference from these considerations is that "commissioners of all drainage districts" refers to the subjects then being regulated—districts formed under the general law—and that there was no purpose to change or deal with districts formed under special acts, and this follows a well established rule of construction.

"It is a canon of statutory construction that a later statute, general, in its terms and not expressly repealing a prior statute, will ordinarily not affect the special provisions of such earlier statute.   In other words, where there are two statutes, the earlier special and the later general—the terms of the general broad enough to include the matter provided for in the special—the fact that the one is special and the other is general creates a presumption that the special is to be considered as remaining

an exception to the general, and the general will not be understood as repealing the special, unless a repeal is expressly named, or unless the provisions of the general are manifestly inconsistent with those of the special. . . . 'And the reason is,' said Wood, V. C., in *Fitzgerald v. Champenys*, 30 L. J. Ch. N. S., 782; 2 Johns. & H., 31-54, 'that the legislature having had its attention directed to a special subject, and having observed all the circumstances of the case and provided for them, does not intend by a general enactment afterwards to derogate from its own act when it makes no special mention of its intention so to do.'

"In Black on Interpretation of Laws, 116, the proposition is thus stated: 'As a corollary from the doctrine that implied repeals are not favored, it has come to be an established rule in the construction of statutes that a subsequent act, treating a subject in general terms and not expressly contradicting the provisions of a prior special statute, is not to be considered as intended to affect the more particular and specific provisions of the earlier act, unless it is absolutely necessary so to construe it in order to give its words any meaning at all.'

"So, in Sedgwick on the Construction of Statutory and Constitutional Law, the author observes, on page 98, with respect to this rule: 'The reason and philosophy of the rule is that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all.'

"And in *Crane v. Reeder*, 22 Mich., 322, 334, Mr. Justice Christiancy, speaking for the Supreme Court of that state, said: 'Where there are two acts or provisions, one of which is special and particular, and certainly includes the matter in question, and the other general, which, if standing alone, would include the same matter, and thus conflict with the special act or provision, the special must be taken as intended to constitute an exception to the general act or provision, especially when such general and special acts or provisions are contemporaneous, as the Legislature is not to be presumed to have intended a conflict.' "

These quotations are taken from *Rodgers v. U. S.*, 185 U. S., 83, and the Court adds: "Both the text-books and the opinion just quoted cite many supporting authorities."

This rule is peculiarly applicable to chapter 348, Public-Local Laws 1913, under which the Muddy Creek District was organized, which is complete within itself, providing in detail for the organization of the commission, laying out of canals, surveys, assessments, etc., and the commissioners are specially required to procure books in which shall be kept

"a perfect record of all dealings and transactions" of the commission or corporation, which would, of course, be subject to inspection by all interested in the district, and would furnish all the information that could be obtained from the statements referred to in C. S., 5374-5.

We are, therefore, of opinion the general law was not intended to affect the special statute, but if the question was doubtful, it is put at rest by sec. 5381, a part of the same subchapter of the general drainage law, which provides, "This subchapter shall not repeal or change any local drainage laws already enacted."

That secs. 5374 and 5375 would change the special act, if permitted to affect it at all, is clear, since they would impose additional duties on the commissioners, and make them liable criminally for failure to perform them.

An authority very much in point is *S. v. Womble,* 112 N. C., 862, in which it was held that an exemption of certain employees of a railroad from working the roads, contained in the act incorporating the company: "Such exemption, being contained in a private act, is not repealed by sec. 2017 of The Code, which required all able-bodied male persons between the ages of eighteen and forty-five to work on the public roads, since by sec. 3873 of The Code it is provided that 'no act of a private or local nature shall be construed to be repealed by any section of this Code.'"

In any aspect of the case, the indictment was properly quashed.

Affirmed.

CLARK, C. J., dissenting: C. S., 5374, establishes a system of supervision and reports required from *"all* drainage districts." The language of C. S., 5374, is: "It shall be the duty of the commissioners of all drainage districts in the State of North Carolina, organized under the provisions of the laws thereof, to file with the clerk of the Superior Court in the county where such district is organized a monthly statement of account," etc.; and 5375 requires the same duty from "the board of commissioners of *all* drainage districts in the State of North Carolina," to file an annual report; and 5376 provides an indictment and penalty "for any board of commissioners for any drainage district in this State for failure to file such statement."

The defendants are indicted for failure to obey this general law. The defense set up is that the defendants, commissioners of the Muddy Creek Drainage Commission, were incorporated under the Public-Local Laws 1913, ch. 348, but it will be seen that the act above cited applies to "all drainage districts." The defendants contend, however, that they are exempt because C. S., 5381, provides: "This subchapter shall not repeal or change local drainage laws already enacted"; but these provisions,

C. S., 5374, 5375, 5376, providing for supervision, control, and publicity as to drainage districts in requiring reports formulate a state-wide measure applying to "all drainage districts in the State," and, moreover, they do not repeal or change in any way the charter of the defendant, which was enacted in 1913. If the act of 1913 had provided specially that it should be exempted from this general police regulation, state-wide in its nature, then it might have been contended that this general act repealed or modified the special act; but it did not do so for the reason that it repealed or changed nothing in the charter of the defendant company, but merely extended to it the supervision of the general police regulation applying to all drainage districts in the State without any exception. There is no indication of any intention to exempt any drainage district from this general statute, and there appears no reason why this defendant should be exempted. The terms of the statute are broad enough to include every drainage district in the State, whether organized under general law or special law, nor can we attach any importance to the fact that the statute of 1917, now C. S., 5374, *et sequitur,* is placed in the chapter entitled "Drainage." The commission to revise the laws was authorized to "distribute the various statutes under such titles and divisions as may to them seem proper," and the location by them of any statute could not possibly affect its meaning or limit its scope.

Nor is there any force in the other grounds urged by the defendant. The statute itself makes the failure to file these reports a misdemeanor, punishable in the discretion of the court which places it within the jurisdiction of the Superior Court. This was enacted four years after the incorporation of the defendant, Muddy Creek Drainage District.

The plain requirement of the law and its evident intention were uniformity and the application of the requirement to "all drainage districts in the State"; and the motion to quash should have been denied.

STACY, J., concurs in dissent.