Campbell, Chief Justice,
delivered the opinion of the court:
The plaintiff was an enlisted man in the Army, and from a date prior to July 1, 1919, to June 12, 1921, was assigned to and in performance of duty in charge of engineer property and fatigue at the Military Academy. The act of March 30, 1920, making appropriation for the support of the Military Academy for the fiscal year ending June 30, 1921 (41 Stat. 541), carried a provision, under the title “Extra Pay for Enlisted men,” as follows: “For extra pay for one enlisted man on duty in charge of engineer property and fatigue at 50 cents per day, $156.50.” The plaintiff sues to recover this sum, as extra pay, claiming it “ for extra pay for the performance of a particular duty * * * provided for by a special provision of legislation allowing such pay as a ‘ uniform and stated addition to the regular pay of an enlisted man.’ ” He contends that the act of March 30, in providing for the extra pay of enlisted men, constituted “ a special grant ” to the enlisted man performing that duty of the amount so appropriated. As sustaining this contention, reference is made to the case of Campagna, 26 C. Cls. 316, 317, and to the case of Schwanz, 50 C. Cls. 276, which cites approvingly the language of Judge Nott in the earlier case as follows: “An appropriation is per se nothing more than the legislative authorization prescribed by the Constitution that money may be paid out at the Treasury. Frequently there is coupled with an appropriation a legislative indication that the designated amount shall be paid to a person or class of persons and from such an appropriation a statutory right arises upon which an action may be maintained.”
The Government’s defense is that the case is controlled by the act of June 4, 1920 (41 Stat. 761), with special reference to section A-b thereof. This act is amendatory of the national defense act, 39 Stat. 166, and provides for a reorganization of the Army. To this end it contains many new provisions. Among others, by section 4 — b it provides that *873 on and after July 1, 1920, the grades of enlisted men shall be such as the President may from time to time direct, with a stated monthly base pay for the several grades, seven in number. It, in terms, repeals existing laws providing for continuous-service pay to take effect July 1, 1920, and makes other provisions therefor. It authorizes the Secretary of War to prescribe regulations under which enlisted men of the sixth and seventh grades may be “rated as specialists and receive extra pay therefor ” as stated sums per month. The section concludes as follows:
“All laws and parts of laws providing for extra duty pay for enlisted men are repealed, to take effect July 1,1920: Provided, That nothing in this section shall operate to reduce the pay which any enlisted man is now receiving during his current enlistment and while he holds his present grade, nor to change the present rate of pay of any enlisted man now on the retired list.”
Under the prescribed regulations in accordance with the act of June 4-enlisted men were put into grade 6, designated as “ private, 1st class,” and grade 7, where their designation was “ private.” Plaintiff was a sergeant in the fourth grade. The provision in section T-b for specialists who could receive “ extra pay ” as such applies only to privates, first class, and privates, or grades six and seven, and does not include a. sergeant. Plaintiff therefore could not receive any extra pay provided for by section 4r-b for specialists.
The case turns upon the construction to be given the act of June 4,1920, and this must be controlled by the intention of Congress to be derived from the entire enactment. (See Rodgers case, 185 U. S. 83.) As already stated, Congress was dealing with the question of Army reorganization, and accordingly the act has many and elaborate provisions designed for that purpose. As incidental to that general purpose the pay of the several grades of enlisted men is stated in the section under review. The act specifically repeals all laws and parts of laws providing for “ extra duty pay ” for enlisted men, and by section 52 repeals all laws and parts of laws “ in so far as they are inconsistent ” with the act. Manifestly it was intended to deal comprehensively with the proposed reorganization, and also with the pay of enlisted *874 men. There can be no question that the pay of 50 cents per day for the enlisted man on duty in charge of engineer property and fatigue at the Military Academy was extra duty pay. The act carrying the appropriation for that service defines it as “ extra pay for one enlisted man on duty.”
The rule stated in the Gampagna case, supra, relied on by plaintiff, recognizes as a condition to recovery that there shall be “ a legislative indication ” that the designated amount shall be paid to a person or, it may be added, for a special service. Assuming that plaintiff could recover if we had the act of March 30 alone to deal with, the question is whether the appropriation provided by that act was affected by the repealing clauses in the act of June 4. The appropriations authorized by the act of March 30 were for the fiscal year 1921, beginning July 1, 1920; the repealing clause in the act of June 4, relating specifically to “extra duty pay for enlisted men,” also became effective July 1, 1920. As to the effect to be accorded the repealing clause, plaintiff cites the Rodgers case, 185 U. S. 83, 87, 88, 89. It involved the construction of an act containing provisions that appeared to be inconsistent, relating to pay of certain officers. As applicable to the instant case, we quote the first paragraph of the opinion in that case:
“This case invoNes a mere question of statutory construction. The matter of military and naval salaries is one exclusively within the control of Congress. The courts may neither increase nor decrease them, correct any supposed inequalities, nor in any manner set aside or modify the action of the legislative branch of the Government in respect thereto. If there be inequality, injustice, it can be corrected alone by Congress, and the courts may not interfere.”
It states, as a canon of construction, that a later statute, general in its terms, will not ordinarily affect a prior special act “ unless a repeal is expressly named, or unless the provisions of the general are manifestly inconsistent with those of the special act.” Plaintiff’s brief apparently concedes that the repealing clause in section 4-b was effective for some purposes and mentions the act of March 3, 1885, 23 Stat. 359; the act of April 26, 1898, Sec. 6, 30 Stat. 365; and 20 Stat. 219, providing extra-duty pay, as being acts which Congress *875 undertook to repeal. We can agree that these were included in the repeal, but we also think that they were no more mentioned than is the one upon which plaintiff predicates his claim. We think the provisions of the general act are manifestly inconsistent with those of the act of March 80. The broad language of Section A-b, “ all laws or parts of laws providing for extra-duty pay,” leaves no room for the contention that it was not the intention of Congress to repeal the provision making appropriation for the enlisted man serving at the Military Academy. Subsequent acts of Congress omit the appropriation for this special service made by the act of March 30, but make provision for “ specialists ” such as are mentioned in the act of June 4. This omission is indicative of the purpose of the repealing clause. The plaintiff contends that the act making appropriations for the support of the Military Academy was a grant of the amounts stated “ to enlisted men who fulfilled the condition so minutely set forth and that the act could be repealed only “ by some act equally explicit,” but if it be treated as a “ grant,” the grant ended when the appropriation failed, and nothing was taken from the plaintiff while the appropriation continued. It ended with the fiscal year 1920 and was not renewed for the fiscal year 1921. We do not think it was necessary for the Army Reorganization act to specifically mention, or repeal by name, the various acts providing for extra-duty pay before they could be regarded as repealed if language sufficient for that purpose was in fact used, and as already said we' think the language that was used was entirely sufficient to convey the meaning that laws or parts of laws providing for extra-duty pay for enlisted men were repealed,' effective July 1, 1920. The act providing for the extra-duty pay for which plaintiff sues was accordingly repealed, unless the saving clause in the proviso furnishes support for the claim. This plaintiff insists is its effect. The proviso protects the “ pay ” the enlisted man was receiving “ during his current enlistment and while he holds his present grade.” Two conditions are mentioned, current enlistment and continuance in present grade. It is contemplated that a change in grade might occur under the provisions of the act which would necessarily affect the pay, but what is particularly saved is the *876 pay of the enlisted man who, having enlisted for a term of enlistment, was then in the service. The pay thus protected against reduction was the pay of the enlisted man, sometimes called base pay or pay proper, having regard to the length of service, as distinguished from possible other compensation by extra-duty pay or allowances, or commutation or otherwise. Mills case, 197 U. S. 228, 227. The pay of the plaintiff as an enlisted man did not include as a necessary incident the extra-duty pay provided in the Military Academy act. A right to the latter was taken away and the right to his regular pay was protected. This conclusion is contrary to that reached in Manning's case, 58 C. Cls. 195, 197. It is there stated to be the purpose of the act of June 4, 1920, to repeal all laws and par.ts of laws providing for extra-duty pay for enlisted men, but it is added: “It also seems plain that unless the word ‘pay’ in the proviso is taken to mean ‘extra-duty pay’ the proviso would seem purposeless, as the repeal did not affect anything but ‘ extra-duty pay ’ and so could not apply to any other kind of pay so as to reduce it.” Because of the construction thus stated, the opinion in the Manning case, supra, pretermits any discussion of some of the matters to which we have called attention. The Government apparently acquiesced in the decision of the Manning case. No motion for a new trial was made and an appeal was not taken. On further consideration, however, we are satisfied the Marming case should not be followed. Our conclusion is that the petition should be dismissed. And it is so ordered.
Hat Judge; Dow.net, Judge; and Booth, Judge, concur.
Graham, Judge, took no part in this decision.