Edward MITCHELL et al.,
Plaintiffs-Appellants,

v.

Judge Taylor CRAWFORD et al.,
Defendants-Appellees.

Court of Appeals of Tennessee,
Middle Section.

Jan. 30, 1976.

Certiorari Denied by Supreme Court
April 5, 1976.

Rehearing Denied by Supreme
Court April 19, 1976.

Certiorari Denied by U. S. Supreme
Court Oct. 4, 1976.

Jack Kershaw, Nashville, for plaintiffs-appellants.

Robert W. Simms, County Atty., Lincoln County, Fayetteville, R. A. Ashley, Jr., Atty. Gen., Richard Lodge, Asst. Atty. Gen., State of Tenn., for defendants-appellees.

OPINION

SHRIVER, Presiding Judge.

*I. The Case*

Certain taxpayers and certain parents of schoolchildren and several schoolchildren, by next friend, filed their bill under the Declaratory Judgment Act, seeking relief from actions of the School Board of Lincoln County and the action of the Quarterly County Court of that County in authorizing

the issuance of $4,000,000.00 of school bonds for the improvement of the schools of the County and the building and establishment of a central Consolidated High School at or near Fayetteville, Tennessee.

After an extended hearing, the Chancellor denied the relief sought by plaintiffs and dismissed their bill, from which action plaintiffs have appealed to this Court and have assigned errors.

*II. The Proceedings Below*

Appellants originally filed their suit in the Chancery Court at Nashville and, following an appeal from the Davidson County Chancery Court to the Supreme Court, the case was sent back with instructions that it be proceeded with in the Chancery Court of Lincoln County with dispatch, it having been shown that the school bond issue was being delayed because the County could not deliver a "No Litigation Certificate" to prospective purchasers of the bonds and, thus, the program of building, repairing and improving existing school buildings and the erection of a new High School in Lincoln County in order to meet the minimum State requirements, could not be proceeded with.

It is shown that the Lincoln County School System in the year 1973 and prior years failed to meet minimum State standards and the local authorities were so notified by the State Commissioner and the State Board of Education. Following numerous discussions between the State and County School Officials, plans were made and approved by the State and local authorities for the building of one comprehensive High School near the center of the County and the remodeling of other schools so as to meet minimum State standards.

A $4,000,000.00 school bond issue was voted by a majority of the members of the Quarterly County Court of Lincoln County on June 28, 1974 under the authority of T.C.A. Sec. 49–701, et seq., with the understanding and agreement that the State of Tennessee would make available an additional $2,000,000.00 for certain facilities in connection therewith.

Following a hearing on the merits, Chancellor John D. Templeton entered a Final Decree on July 14, 1975 wherein he set forth in a well reasoned and concise manner the history of the litigation and the proceedings below, together with his findings of fact and conclusions of law, which we summarize as follows:

The Chancellor's Findings and Decree

The final decree recited that the cause came on to be heard before Chancellor Templeton on June 17, 1975 upon the complaint filed by plaintiffs, exhibits thereto, answer of the defendant County and State of Tennessee officials and the entire record in the cause, including briefs and prior orders of the Court, from all of which the Court found and decreed: that the $4,000,000.00 bond issue by Lincoln County as shown by the Minutes of the Quarterly County Court of that County at a Special Session on July 28, 1974, was to be issued under the authority of Section 49–701, et seq., T.C.A., by which no referendum is required; that it was further found and decreed that it was the duty of the State Commissioner of Education and/or the State Board of Education to require the County schools to meet the minimum standards prescribed by the State and, upon failure to do so, the State Commissioner of Education, under authority of T.C.A. § 49–604(B), has the right to withhold minimum foundation school program funds from the local school system.

The Court further found that the proof in the case conclusively shows that for a number of years Lincoln County School System had failed to meet the minimum standards as prescribed by the State Board of Education and that, after numerous deficiencies, and after discussion of a number of plans reflected in the Minutes of the County Board of Education and the Quarterly County Court, the said Quarterly County Court met in special session on August 13, 1973 to consider an appropriation of school funds to help alleviate the deficiencies then existing; that at said special session no funds were actually appropriated, which resulted in a delay in the opening of Lincoln County schools; that, subsequently, the

Lincoln County School Board, with the approval of the State authorities, recommended to the Quarterly County Court of Lincoln County a plan for the renovation, remodeling and erection of school buildings in Lincoln County which called for the elimination of three Rural High Schools and the building of a new Comprehensive High School near Fayetteville, along with the remodeling of other schools in the County so as to bring the County's schools up to the minimum State standards.

It further appeared to the Court that by virtue of a plan concurred in by the State and local school authorities the Lincoln County Quarterly Court, by resolution at its August 28, 1974 special session, authorized the issuance of $4,000,000.00 in school bonds for the purpose above indicated, the State having made available $2,000,000.00 for vocational facilities as agreed upon; that following the adoption of the bond resolution above mentioned, sale of the bonds was advertised and bids were to be received on September 17, 1974; however, plaintiffs, on August 28, 1974, instituted their suit in the Chancery Court of Davidson County, Tennessee against the various State and County officials which had the effect of halting or stopping the sale of said bonds; that the plaintiffs filed their suit in the Chancery Court of Lincoln County which is identical to that brought in Davidson County, it being contended in said suit that Section 49–604(B), T.C.A. is unconstitutional and void and prays for a judgment declaring said statute to be unconstitutional and void. It is further prayed therein that an injunction issue against the Quarterly County Court and County Judge restraining the issuance of the above mentioned school bonds and requiring a referendum on the bond issue question. It is further prayed that the Commissioner of Education of Tennessee be enjoined from withholding funds from Lincoln County pending the outcome of this suit.

Upon consideration of the matters above mentioned, the Court found and decreed that Section 49–604(B) is in no way unconstitutional and does not delegate to the Commissioner of Education any absolute power but confers upon said Commissioner duties circumscribed by guidelines laid down by the law and by rules and regulations adopted by the State Board of Education.

The Court further found and decreed that the Commissioner had in no way made improper demands with reference to the contracts made by him with the Quarterly County Court of Lincoln County and the School Board of said County.

The decree concludes as follows:

"Under these circumstances, the Court finds and decrees that plaintiffs' suit cannot be maintained, and it is, therefore, ordered, adjudged and decreed by the Court that the plaintiffs suit be and the same is hereby dismissed in its entirety, to which action of the Court in dismissing plaintiffs' complaint, the plaintiffs except and pray an appeal to the next term of the Court of Appeals sitting in Nashville, which is granted upon plaintiffs making proper bond within the time allowed by law, and otherwise perfecting their appeal.

All costs of this cause will be taxed against plaintiffs, for which execution may issue, if necessary."

*III. Assignments of Error*

Counsel for plaintiffs has filed fourteen separate assignments of error which it will not be necessary to set forth seriatim.

Said assignments may be summarized as follows:

It is charged that the Chancellor erred in failing to recognize that the County or Local School Board has exclusive power to determine school policy while the Commissioner of Education of Tennessee is an administrative officer whose duty it is to serve the Local School Boards and not to dictate to them.

The plaintiffs earnestly insist that T.C.A. Section 49–201(5) imposes a duty on the County Court to call a referendum on the question of a bond issue for schools, particularly where, as in the case at bar, some four

or five thousand citizens of the County petitioned the Court for such a referendum.

Assignments 4, 5, 6, 7, 8, 9 and 10 complain of the action of the Chancellor in either refusing to admit certain testimony or in disregarding certain testimony and evidence with respect to the building of the comprehensive High School and the abandoning of certain other existing High Schools in the County, and a failure to give credence and weight to the testimony of witnesses with regard to the action of the County Court in voting the bond issue and the influences that were brought to bear on the Court to induce such action.

The remaining assignments complain of the refusal of the Chancellor to allow interrogatories to be taken of a prominent national authority on education regarding the controversy between its finding regarding centralized comprehensive schools as opposed to local community schools and his failure to give due weight to the sentiments of a large number of taxpayers, parents of schoolchildren and the welfare of the children themselves regarding the central issue involved here or the proper authority to be accorded Local School Boards as opposed to dictation by the State Board, and in failing to give due weight to the testimony of expert witnesses concerning the serious controversy in the educational world as to the respective merits of central consolidated schools as opposed to community oriented schools.

### IV.   —Our Conclusions

We feel it is unnecessary to discuss at any length the questions fully discussed and decided by the Chancellor.

We deem it proper, however, to call attention to certain facts and decisions bearing on the questions at hand.

Attention is called to the following stipulation which was entered into by counsel for the parties and filed prior to the hearing below:

"Come the parties by and through their attorneys and agree and stipulate to the following facts:

1.   That the Lincoln County Quarterly Court is composed of 32 Magistrates.

2.   That at the time of the filing of plaintiffs' suit, Lincoln County was in the process of advertising its $4,000,000.00 school bonds in the Lincoln County News, and in The Bond Buyer, a New York newspaper, with sealed bids to be received on September 17, 1974.  The filing of the plaintiffs' suit had the effect among others of halting or enjoining the bond sale until such time as Lincoln County can furnish the prospective bond purchaser with a 'no litigation certificate', stating in effect that no litigation is pending or threatened with reference to the sale of Lincoln County's $4,000,000.00 school bonds.

APPROVED:

/s/ Jack Kershaw
Attorney for Plaintiffs
/s/ Robert W. Simms
Attorney for Lincoln County
Defendants
/s/ Richard Lodge
Assistant Attorney General,
Attorney for State Defendants"

Plaintiffs' Motion to Reconsider, filed in the Chancery Court on June 17, 1975, states:

"Plaintiffs would respectfully call the Court's attention to the fact that plaintiffs challenge the right of the County Court to use T.C.A. 49–701 as authority for issuance of bonds; therefore the mere fact that it did cite said statute does not obviate the necessity of considering a subsequent statute T.C.A. 49–201(5) heretofore overlooked by the Supreme Court of this State."

■ Section 49–201 is entitled "Duties of Quarterly County Court."  Subsection (5) thereunder is as follows:

"(5) To submit to the voters of the county, at any regular session, or at any special session called for that purpose, the proposition to issue bonds for the purpose of purchasing grounds, erecting and furnishing school buildings, and, upon the affirmative vote of the majority cast in

said election, to issue said bonds in accord therewith."

Section 49–701, T.C.A. is the first section in Chapter 7 entitled "BONDS FOR SCHOOL PURPOSES". Said section provides:

"*49–701. Issuance by county courts authorized.*—The counties through their respective quarterly county courts are authorized to issue and sell bonds for the purposes and in the manner provided in this chapter."

The succeeding sections in said Chapter set forth certain regulations and proceedings regarding the issuance of bonds for actual school purposes which are not in question in this suit.

Contrary to the insistence of counsel for plaintiffs that T.C.A., Section 49–201(5) has been overlooked by the Courts of Tennessee and not heretofore acted on, we think *State ex rel. v. Safley, Chairman, etc., et al.* (1937), 172 Tenn. 385, 112 S.W.2d 831, deals with the question at hand. In that case a bill by the State of Tennessee, on relation of certain taxpayers, was filed against C. R. Safley, Chairman, and others, to enjoin the issuance of school bonds under a resolution of the County Court. From a decree dismissing the bill, the complainants appealed. In the Opinion by Mr. Justice Chambliss, it is pointed out that the County Court acted under the authority of Chapter 5 of the Code entitled "Bonds for Schoolhouses," and under Title 7 of the Code, entitled "Education".

In the course of the Opinion, the section of the Code being dealt with was quoted, as follows:

"*Quarterly County Courts may issue and sell bonds for school buildings, etc.* —The Counties through their respective Quarterly County Courts are authorized to issue and sell bonds for the purposes and in the manner hereinafter provided."

This is the language of the present section under consideration, to-wit, Section 49–701.

The Court further quotes what is now Section 49–702, providing that bonds may be issued by the Quarterly County Court by resolution adopted by a majority of the members.

The Opinion continues by stating that, by an amendment to the original bill, the issuance of these bonds was challenged because not authorized by an election of the qualified voters of the County, as provided by another section of the Code. The Court goes on to say that the specific statutory authorization in Chapter 5, hereinabove quoted, prevails over the general requirements of the section calling for a majority vote of the qualified voters of the County and states that the specific authorization constitutes an exception because the special provisions of the Code prevail over the general provision invoked. He then quotes from Section 13 of the Code as it was adopted in 1932, as follows:

"*Conflicts.*—If provisions of different chapters or articles of the Code appear to contravene each other, the provisions of each chapter or article shall prevail as to all matters and questions growing out of the subject matter of that chapter or article."

The Court, quoting with approval from *Rodgers v. United States,* 185 U.S. 83, 22 S.Ct. 582, 46 L.Ed. 816, and from *Crane v. Reeder,* 22 Mich. 322, said:

" 'Where there are two acts or provisions, one of which is special and particular, and certainly includes the matter in question, and the other general, which, if standing alone, would include the same matter and thus conflict with the special act or provision, the special must be taken as intended to constitute an exception to the general act or provision, especially when such general and special acts or provisions are contemporaneous, as the legislature is not to be presumed to have intended a conflict.'

"Finally, the views indicated are in harmony with our Tennessee cases, and find direct support in the following excerpt from the opinion of Chief Justice Neil in *Board of Park Commissioners v. Nashville,* 134 Tenn. 612, at page 629, 185 S.W. 694, 698."

The result of the decision of the Court in *Safley* is as stated in Syllabus 4:

"*4. Statutes:* An act treating a subject in general terms and not expressly contradicting provisions of a special statute should not be considered as intended to affect the more specific provisions of a special statute, unless it is absolutely necessary so as to construe general act to give its words any meaning at all."

We, thus, agree with the Chancellor that the bond issue as authorized by the Quarterly County Court is a valid issue without submission to the voters by referendum.

█ As to the constitutionality of the statutes involved, we concur in the Chancellor's decree holding said statutes valid.

While this Court is sympathetic with the views held by plaintiffs in this case concerning the desirability of community oriented schools as generally opposed to large consolidated schools that require extensive busing of children for long distances, we are compelled to agree with the Chancellor that, in the case at bar, the relief prayed for by plaintiffs must be denied.

It results that the assignments of error are overruled and the judgment of the Chancellor is affirmed.

AFFIRMED.

TODD and DROWOTA, JJ., concur.