## BANK OF MADISON v. GRABER et al.
### (two cases).
### Nos. 9096, 9149.

Circuit Court of Appeals, Seventh Circuit.

Nov. 27, 1946.

Elwood Hansmann, of Chicago, Ill., and Byron H. Stebbins, Ray M. Stroud, and E. L. Wingert, all of Madison, Wis., for appellant.

Nat P. Biart, of Madison, Wis., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

These appeals are from two separate orders entered in an interpleader suit instituted by the Bank of Madison, plaintiff-appellee, against John N. Graber, defendant-appellee (hereinafter referred to as Graber), and Oliver Bodor, defendant-appellant (hereinafter referred to as Bodor). Inasmuch as the orders appealed from were entered in the same suit and involve controversies resulting from a single contract entered into between Graber and Bodor, they may, so we think, be appropriately disposed of in a single opinion.

The appeal in No. 9096 is from an order entered April 12, 1946, denying Bodor's motion for a stay of all proceedings pending the submission to arbitration of the controversies between the parties. The court in its order denying said motion determined that Bodor was not entitled to such arbitration.

The contract giving rise to the instant controversies was made by Graber and Bodor on the 13th day of March, 1945, and provided for the manufacture by Bodor for and on behalf of Graber 7,800 gross of Badger cranes (a device for the hanging of curtains and draperies at doors and windows) for the sum of $57.60 per gross set of two cranes. The contract provided that Graber should pay the agreed price for each order shipped within thirty days from the date of invoice and that he would deposit in escrow with a bank in New York the sum of $20,000 for the faithful performance of the agreement by him. On May 22, 1945, this contract was altered to the extent of providing that Graber should make the escrow deposit required of him, with the Bank of Madison located at Madison, Wisconsin, as escrow agent. It also provided that if Graber failed to pay Bodor within thirty days from the date of shipment of any of said cranes manufactured and delivered by Bodor in accordance with said agreement, the escrow agent upon demand should pay him. The sum of $20,000 was deposited by Graber with the Bank of Madison, which the latter agreed to hold and disburse pursuant to the agreement between the parties.

The appeal in No. 9096, which we shall first consider, involves the following provision of the contract: "Any controversy arising in connection with either the interpretation of this agreement or the performance or non-performance thereof, shall be settled by arbitration in accordance

with the laws of the State of New York by three arbitrators, one of whom shall be selected by each of the parties hereto and the third by the two so selected."

Bodor promptly entered upon the manufacture of the cranes pursuant to the contract aforesaid, which he delivered at the direction of Graber to a warehouse in New York City, from which they were shipped to Graber at Middleton, Wisconsin, and to his various customers in that and other states. Graber made payment of all invoices for cranes manufactured and delivered up to August 23, 1945 in the amount of $12,902.40, but refused to make payment of invoices for cranes thereafter shipped in the amount of $22,325.26. On October 1, 1945, Graber gave notice that he elected to cancel the contract forthwith.

On November 23, 1945, Bodor commenced an action against the Bank of Madison in the Supreme Court of the County and State of New York, and caused a writ of attachment to be issued, and funds of the Bank of Madison on deposit in the Chemical Bank and Trust Company of New York City in the amount of $20,000 to be attached under the writ. No steps were taken in that action other than service of process upon the Chemical Bank. At the time of the entry of the order appealed from (April 12, 1946), the New York action was still pending, although the record in No. 9149 indicates that it was subsequently dismissed by Bodor.

On December 11, 1945, the Bank of Madison commenced the instant interpleader action in the District Court for the Western District of Wisconsin, praying that Graber and Bodor be required to interplead and settle between themselves their right to the escrow money. A temporary restraining order was entered restraining Bodor from proceeding with the New York action.

Summons was served on Bodor in the interpleader action December 13, 1945, and on December 19, 1945, he made a written demand upon Graber for arbitration in accordance with the provision contained in the contract of March 13, 1945, to which demand Graber made no response. On January 30, 1946, Bodor filed his motion for a stay of proceedings in the interpleader action pending final completion of arbitration, and on April 12, 1946, the District Court entered an order denying such motion, from which order the instant appeal comes.

The question for decision is whether Bodor was entitled to arbitration. If so, he was entitled to a stay of proceedings in the instant action pending such arbitration; otherwise, the motion to stay was properly denied.

There is an express provision in the contract that it shall be construed and any controversies arising thereunder governed by the laws of the State of New York. Both parties cite New York cases in support of their respective contentions, none of which are conclusive but rather indicate that a decision must turn largely upon the facts of each case. It must be conceded, so we think, that the arbitration provision of the contract was controlling unless waived by Bodor by reason of his commencement of an action in the State Court of New York.

No good purpose could be served in any extended discussion of the New York cases. The main case relied upon by Bodor is that of Newburger v. Lubell, 257 N.Y. 383, 385–387, 178 N.E. 669, which held that the mere commencement of an action at law did not constitute a waiver of an arbitration provision in the absence of notice that a controversy existed between the parties. Graber, in order to escape the effect of this holding contends that a controversy existed and relies upon certain facts disclosed by the pleadings. In the complaint which Bodor filed in New York, it is alleged that Bodor "demanded that the Defendant pay to him the sum of $20,000.00, which the Defendant refused and still refuses." It is also disclosed that before the commencement of that action Graber notified Bodor "that he, the said Graber, elected to cancel said contract forthwith," and that the Bank of Madison had refused upon Bodor's demand to make payment to him of the escrow funds. It also appears that the New York suit called for a construction and interpretation of the contract. We agree with Graber that there existed a controversy referable to arbitration under the contract, prior to and at

the commencement of the New York action. Another New York case relied upon by Bodor is that of La Hay, Inc., v. Pathé Exchange, Inc., 237 App.Div. 468, 470, 261 N.Y.S. 495, 497, wherein the court said: "We agree with the learned trial court that plaintiff did not waive any rights under the arbitration clause by bringing the equity action, particularly since that action was discontinued with the consent of both parties prior to the institution of this proceeding."

That statement is of little benefit to Bodor since his New York action was not dismissed until long after the institution of the instant interpleader action, in fact was still pending at the time the order appealed from was entered.

In response to Bodor's contention that the mere filing of the New York suit was not sufficient to evidence an intention to abandon arbitration, Graber relies upon Young v. Crescent Development Co., 240 N.Y. 244, 248, 148 N.E. 510, 511, wherein the court stated: "Intent is not predicated on the number of acts which are performed but on their character. The question whether respondents entered upon a course which led them away from the right to arbitration and to its abandonment is not necessarily determined by the number of steps which they have taken upon that course but may be determined by the first step which they took, if it clearly indicates an intent to go that way." In that case the court held there had been a waiver by a contractor of the right of arbitration by the filing of a mechanic's lien, although there had been no service of summons in such action.

Both sides rely upon the recent New York case Short v. National Sport Fashions, Inc., 264 App.Div. 284, 285, 35 N.Y.S.2d 169. True, the court held there had been no waiver under the peculiar facts of the case.. It recognized, however, that the abandonment of the right does not necessarily depend upon the number of steps taken but that such abandonment may be evidenced by the first step, citing Young v. Crescent Development Co., supra.

While the question is not free from doubt, we are of the view that Bodor's action in commencing his suit in New York State rather plainly evidenced an intent to waive his right to arbitration. Certainly that suit was not commenced merely to preserve the status quo of the situation or to prevent the bank from returning the escrow money to Graber. It must have been commenced for the purpose of procuring a decision by the court on the controversy which had developed between the parties, which included the amount due and owing to Bodor. This necessarily involved the question of performance by the parties under the contract, whether Bodor had been manufacturing Badger cranes in conformity with the contract and whether Graber had any legal justification for the cancellation of the contract. Obviously, Bodor did not have a right to arbitrate and to litigate at the same time, and when he chose the latter course we think he abandoned the former. Thus the order appealed from is affirmed.

The appeal in No. 9149 is from a temporary restraining order entered May 23, 1946, enjoining Bodor, pending the disposition of the suit, from manufacturing, selling, offering and advertising for sale certain drapery cranes embodying the invention of Graber and from using the name "Badger Cranes." As already noted, Graber on October 1, 1945 gave notice of his election to cancel the contract forthwith. The contract contained a provision fixing the rights of the parties under such circumstances and particularly those of Bodor as follows: "In case the Second Party [Graber] should cancel this contract prior to the completion of the manufacture of the total amount provided for herein, or on completion of the contract by the First Party [Bodor], the First Party shall be authorized and entitled to sell, through any channels chosen by said party, at such prices as the First Party shall deem fair, under the circumstances, all material on hand or on order, either as finished merchandise or as parts, without making any payment on account thereof by way of royalties, or otherwise, to the Second Party. * * *"

At the time Graber notified Bodor of the cancellation of the contract the latter had on hand considerable material to be

used in manufacture under the provisions of the contract. He also, up to May 8, 1946, manufactured and sold fifty-six gross of cranes. Bodor contends that such cranes were manufactured and sold in accordance with the contract and that he also had a right to manufacture other cranes from the material on hand and sell the same.

The two main contentions made by Bodor concerning the impropriety of the order under attack are (1) that the court made no findings of fact and conclusions of law constituting the grounds for the granting of the temporary injunction, and (2) that Bodor was denied an opportunity to meet the oral testimony introduced by Graber on the hearing which culminated in the order complained of.

Admittedly, there was no attempt to comply with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which requires: " * * * the court shall find the facts specially and state separately its conclusions of law thereon * * * ; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action."

The question is whether the injunction in the instant case should be sustained in the absence of such findings and conclusions. This court in Shannon et al. v. Retail Clerks, International Protective Ass'n et al., 7 Cir., 128 F.2d 553, reversed such an order in part at least for failure to comply with this rule. The court referring to the rule, stated (128 F.2d page 555): "These are strongly worded, mandatory provisions which should be respected. They are not meaningless words."

■ Graber seeks to escape non-compliance with this rule by contending that the restraining order itself contained recitals which are tantamount to findings of fact and conclusions of law and that they are sufficient to serve as a basis for the order. We think this contention is not sound. Assuming that the order contains such recitals, we are of the view that the necessity for findings in compliance with the rule still would be necessary. In the recent case of United States v. Causby et al., 66 S.Ct. 1062, 1069, the Supreme Court stated: "But the deficiency in findings cannot be rectified by statements in the opinion. [Citing cases.] Findings of fact on every 'material issue' are a statutory requirement." We see no reason why the rule which requires findings of fact should be treated any different than a statutory provision containing the same requirement. We think that if recitals in an opinion fail to meet the statutory requirement, as the Supreme Court has held, that recitals in an order fail to meet the requirement of the rule.

■ Furthermore, we are of the view that the recitations in the order, though accepted as findings, are not sufficient. The order recites that "Oliver Bodor, defendant above named has unlawfully manufactured, offered and advertised for sale, and delivered drapery cranes known as Badger Cranes and embodying the invention of said defendant, John N. Graber, as covered by his patent U. S. Patent No. 2321196 * *." In this connection it must be remembered that Bodor was authorized by. the express terms of the contract of March 13, 1945, in the event of cancellation by Graber, to manufacture and sell all material on hand either as finished merchandise or as parts, without the payment of royalties to Graber. Thus it would appear that Bodor was authorized to manufacture and sell Badger cranes under Graber's invention as covered by his patent. A reading of Graber's oral testimony makes it plain that he recognized Bodor's right in this respect and his sole complaint was that Bodor was not manufacturing cranes in conformity with a sample which the parties had agreed upon. In fact, the entire controversy before the court revolved around this question. This is borne out by the fact that the court entered an order sending the physical devices to this court for our inspection.

In this connection it should also be kept in mind that there is nothing in the original contract which describes the cranes to be manufactured by Bodor. In other words, there is nothing in the contract

from which it can be determined whether Bodor was or was not manufacturing in compliance therewith. The answer to this question must be found in an oral agreement between the parties wherein Graber contends that Bodor was to manufacture in accordance with an agreed sample. It thus appears that the propriety of the restraining order depended upon whether the cranes manufactured by Bodor were in conformity with such sample. Bodor contends in the affirmative and Graber to the contrary. Thus there is nothing in the injunctive order which can be construed as a finding one way or the other on this disputed factual issue.

What we have said makes it unnecessary to consider in detail Bodor's contention that he was denied an opportunity to meet the oral testimony introduced by Graber on the hearing which culminated in the order complained of. At the time of the hearing, Bodor was in New York. His counsel contends that he understood the matter was to be heard upon affidavits which the parties had submitted. The record furnishes a basis for this contention. However, on the day of the hearing the court permitted Graber and another witness produced by him to testify orally, over the objection of Bodor's counsel that he in the absence of his client was not prepared to meet such testimony. The record strongly indicates that the action of the court in allowing the restraining order was predicated largely upon this oral testimony, without giving Bodor's counsel an opportunity to meet it. While we recognize the wide latitude possessed by a court in a hearing on a matter of this character, we are of the view that under the particular circumstances Bodor should have been permitted to give his version of the oral agreement as to the sample which he was to use as a pattern. Whether the refusal to give Bodor such an opportunity amounted to an abuse of discretion, we need not decide in view of the fact that the order must be reversed for failure to comply with Rule 52(a).

The order is therefore

Reversed.