BALTIMORE & O. R. CO. v. CHICAGO
RIVER & INDIANA R. CO.

No. 9615.

United States Court of Appeals
Seventh Circuit.

Nov. 11, 1948.

Burke Williamson and Jack A. Williamson, both of Chicago, Ill. (W. A. Endle, Gen. Counsel, Brotherhood of Railroad Trainmen, of Cleveland, Ohio, and Adams Williamson & Turney, of Chicago, Ill., of counsel), for appellants.

Ernest S. Ballard, Wm. F. Price, Walter I. Deffenbaugh, Sidney C. Murray, Marvin A. Jersild, Ralph M. Shaw, Guy A. Gladson and Bryce L. Hamilton, all of Chicago, Ill., and H. L. Underwood, Interstate Commerce Commission, of Washington, D. C. (Pope & Ballard, of Chicago, Ill., of counsel), for appellees.

Before SPARKS, Chief Judge, and MAJOR and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This action was brought under § 16(12) of Part I of the Interstate Commerce Act, 49 U.S.C.A. § 16(12). By their complaint plaintiffs seek a permanent injunction to restrain violation by defendants, The New York Central Railroad Company, The Chicago River and Indiana Railroad Company and Chicago Junction Railway Company (hereinafter respectively referred to as the Central, the River Road and the Junction), of an order issued by the Interstate Commerce Commission on May 16, 1922, which authorized, subject to certain conditions, the acquisition of the Central and the River Road by purchase of the latter's capital stock, and acquisition by the River Road of control, by lease, of the Junction. On a former appeal to this court, we held that the court erred in issuing a temporary restraining order against Junction; hence, for the purposes of this appeal, we need not be concerned further with this defendant. Baltimore & Ohio Railroad v. Chicago Junction Ry., 7 Cir., 156 F.2d 357. The River Road operates a switching railroad. Its holdings include all the tracks connecting various trunk lines with the Union Stock Yards at Chicago, Illinois. The condition which was alleged to have been violated was condition 3 in the Commission's report, which provides: "3. The present traffic and operating relationships existing between the Junction and River Road and all carriers operating in Chicago shall be continued, in so far as such matters are within the control of the Central."

The complaint alleged that the practice of allowing plaintiffs to use River Road's tracks with their own power and crews was in effect on May 16, 1922, and continuously thereafter to February 1, 1946; that on or about January 25, 1946, the Central and the River Road notified plaintiffs that after February 1, 1946, plaintiffs would not be permitted to move the stock cars, and that the cars would be moved on the line of the River Road by the power and crews of the River Road from the points of interchange with plaintiffs, and that at such points they would be delivered by the River Road to plaintiffs.

On February 1, 1946, the Central and the River Road proceeded to act in accordance with the notice, and on February 12, 1946 this suit was brought to compel

obedience by defendants to condition 3, it being alleged that the aforesaid action of defendants pursuant to the notice of January 25, 1946 was in violation of condition 3. February 21, 1946 the Commission filed its complaint of intervention, alleging that the action of the Central and the River Road in making the change, in operations "constituted and was discontinuance in part of 'the present traffic and operating relationships existing between the * * * River Road' and the plaintiffs herein" and was in violation of the order of May 16, 1922; that by § 5(8) of the Interstate Commerce Act, 49 U.S.C.A. § 5(8), the Commission was authorized to seek, and the District Courts of the United States were given jurisdiction to afford, injunctive relief to restrain violation of an order issued under § 5 of the Act. The complaint prayed that preliminary and permanent injunctions be entered restraining the violation of the order of May 16, 1922 and condition 3 thereof.

For the purpose of a hearing on the motion for a preliminary injunction the parties entered into a stipulation of facts in which the facts alleged in the complaint were admitted as true. The stipulation also recited that the Brotherhood of Railroad Trainmen (appellant herein), bargaining agent under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., for River Road trainmen, having failed to settle certain disputes—among others a demand, claimed by Brotherhood to be based upon a contract with the River Road, that River Road trainmen be given the work of moving and switching the livestock cars—notified the River Road that unless the disputes were settled before January 23, 1946, River Road trainmen would go out on strike. Thereupon River Road made an agreement with Brotherhood which provided that the work of moving and switching livestock cars be given to River Road trainmen.

Neither the Brotherhood nor any of the employees it represents was named in the complaint as a defendant. On March 14, 1946, no notice having been served on Brotherhood and no representative of Brotherhood appearing, the District Court made findings of fact and conclusions of law. The court found that the order of

May 16, 1922 had been violated and entered a preliminary injunction enjoining defendants from failing and neglecting to obey said order of May 16, 1922 with respect to the transportation of livestock other than hogs and sheep from said Union Stock Yards, and from violating condition 3 of said order in the like respect, and commanding them to permit plaintiffs to move their said cars over the line of the River Road as had been the practice prior to February 1, 1946.

On May 20, 1946 Brotherhood filed its motion to intervene as a party defendant. The motion was denied and Brotherhood appealed. The Supreme Court reversed the District Court and held that Brotherhood had an absolute right to intervene under § 17(11) of the Interstate Commerce Act, 49 U.S.C.A. § 17(11). See Brotherhood of Railroad Trainmen v. Baltimore & O. R. Co., 331 U.S. 519, 67 S.Ct. 1387, 91 L.Ed. 1646. September 26, 1947, Brotherhood was permitted to intervene. It immediately moved to vacate the injunction, to assess damages against plaintiffs, and for a summary judgment, and, on September 29, 1947, moved for an order requiring plaintiffs to give additional security for the preliminary injunction conditioned as provided in the Norris-LaGuardia Act. 29 U.S.C.A. § 107(e). The District Court, without making any findings of fact or conclusions of law, entered an order overruling Brotherhood's motions but directed plaintiffs to give an additional bond in the sum of $25,000, conditioned upon the payment of such damages as the River Road trainmen might be found to have sustained after October 13, 1947 because of the issuance of the preliminary injunction, and provided it should be found that the injunction was improvidently issued. On March 25, 1948 Brotherhood filed its notice of appeal "from so much of the order * * * as denies the motion of the Brotherhood of Railroad Trainmen to vacate and dissolve the preliminary injunction * * * and from so much of said order as * * * requires the plaintiffs to file their bond only in the sum of $25,000.00 and conditioned as provided in said order."

Appellant's primary contentions are that the suit involved a labor dispute within the

meaning of the Norris-LaGuardia Act and that the court lacked jurisdiction because of the absence of indispensable parties, i. e., failure to join as parties to the suit the River Road trainmen.

As to the first contention, the argument is, that when the 1922 order was made by the Commission, trainmen employees of River Road were working under a collective bargaining agreement which entitled them to perform all the work of trainmen on the lines of their employers; that Brotherhood, the bargaining agent under the Railway Labor Act for the River Road trainmen, made a demand, based upon its contract with the River Road, that these trainmen be given the work of moving and switching the livestock cars over the River Road trackage. It threatened a strike unless this demand was met. Under this threat the dispute was settled January 23, 1946, on the agreement of River Road to assign to its employees the work connected with such movements of cattle, effective February 1, 1946. This agreement, it is argued, necessarily carried with it recognition of the right of River Road employees to perform that work, and since plaintiffs have not complied with the Norris-La-Guardia Act, the injunction must be dissolved. In support of its argument appellant cites a number of cases. It relies, principally upon Lee Way Motor Freight v. Keystone Freight Lines, 10 Cir., 126 F. 2d 931, and Brotherhood of Railroad Trainmen v. Baltimore & Ohio Railroad, 331 U.S. 519, 67 S.Ct. 1387, 91 L.Ed. 1646.

On the other hand, appellees contend that the suit did not grow out of a labor dispute. They insist it involved and grew out of a violation of the Commission's order.

Concededly, if the Norris-LaGuardia Act is applicable, the court was without jurisdiction because under § 7 of that Act jurisdiction is withheld from the District Court to issue an injunction in a case to which that Act is applicable unless the complaint makes numerous specifically designated allegations under oath. No such allegations appear in the complaint in this suit.

In the Lee Way case, supra, plaintiff was engaged in a labor dispute with its own employees and its place of business was being picketed. A connecting motor carrier who customarily interchanged freight with the plaintiff had a contract with its employees which provided that they would not be required to cross picket lines. Plaintiff sued to compel the connecting motor carrier to continue to interchange freight with the plaintiff. Thus it is clear that there was a labor dispute between the plaintiff and its own employees which had resulted in a strike, and that plaintiff, the employer, was seeking the aid of the general equity powers of the court to break the strike. An injunction was refused because a labor dispute was involved within the meaning of the Norris-LaGuardia Act.

■ In our case plaintiff carriers and the River Road and its employees did not stand in the position of employer and employee, and there was no labor dispute between them; consequently the Lee Way case is not in point.

As far as we have been able to discern, the only reason for citing the Brotherhood case, supra, in support of appellant's contention that the suit involved a labor dispute, is the fact that the Supreme Court, 331 U.S. at page 522, 67 S.Ct. at page 1389, 91 L.Ed. 1646, states: "A stipulation of facts was then filed. After describing the change in handling the cars, it pointed out that this change resulted from a settlement between the River Road and the Brotherhood of Railroad Trainmen *of a labor dispute* over the work involved in these livestock car movements." (Emphasis added.) We have not been persuaded that the Supreme Court, by the use of the phrase "of a labor dispute," found as a fact that the suit had to do with a labor dispute within the meaning of the Norris-LaGuardia Act. To us it is clear that the questions decided by the Supreme Court in the Brotherhood case, supra, were that the suit was one properly brought under § 16(12) of the Interstate Commerce Act and that appellant had an absolute right to intervene under § 17(11) of the Act.

Paragraph 12 of § 16 of the Act, under which, as we have already observed, plaintiff brought this suit, has been twice amended, and as so amended, it has been re-enacted since the passage of the Norris-LaGuardia Act. As so last amended it

provides that suit against any carrier failing or neglecting to obey any order of the Commission other than for the payment of money, may be instituted by the Commission or any party injured thereby for the enforcement of the order, and empowers the court to enforce obedience to the order by injunction, mandatory or otherwise, to restrain such carrier from further disobedience or to enjoin upon it obedience.

The primary rule of statutory construction is to give effect to the intention of the legislature. Whenever that is apparent it dominates and interprets the language used. So where there are two statutes, the earlier special and the later general, the special controls the general, and the fact that one is special and the other is general creates a presumption that the special is to be considered as remaining an exception to the general. The general will not be understood as repealing the special, unless a repeal is expressly named, or unless the provisions of the general are manifestly inconsistent with those of the special. Rodgers v. United States, 185 U.S. 83, 22 S.Ct. 582, 46 L.Ed. 816. Here there was no express repeal by Congress of § 16(12) of the Interstate Commerce Act; on the contrary, it was amended and re-enacted after the passage of the Norris-LaGuardia Act. In this situation, we think there was no implied repeal, and there is no ground for concluding that the policy enunciated by Congress in § 16(12) of the Interstate Commerce Act was abandoned by the enactment of the Norris-La-Guardia Act. Virginian Ry. v. System Federation, 300 U.S. 515, 563, 57 S.Ct. 592, 81 L.Ed. 789. In this connection it is interesting to note that while the question of the jurisdiction of the District Court was not directly before the Supreme Court in the Brotherhood case, supra, it is clear that the Supreme Court had no doubt that the District Court had jurisdiction for the reason that in that case, 331 U.S. at page 529, 67 S.Ct. at page 1392, 91 L.Ed. 1646, it said: "The instant case is a ready illustration of a judicial proceeding arising under this Act; a suit of this nature is authorized solely by § 16(12) of the Act." Moreover, in its brief in the Supreme Court in the Brotherhood case, supra, ap-

pellant argued that the Norris-LaGuardia Act was applicable; hence we believe that the question of whether or not the Norris-LaGuardia Act was applicable is settled, since the Supreme Court was aware of the fact that Brotherhood, if intervention was allowed, would attack the jurisdiction of the District Court and would insist that the case was one to which the requirements of the Norris-LaGuardia Act were applicable. In these circumstances the Supreme Court would, so we think, proceed to examine and determine not only its own jurisdiction, but also the jurisdiction of the District Court, Mansfield, C. & L. M. Ry. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462; Great Southern Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842; Commonwealth of Kentucky v. Powers, 201 U.S. 1, 35, 26 S.Ct. 387, 50 L.Ed. 633, 5 Ann.Cas. 692; and Chicago, B. & Q. Ry. v. Willard, 220 U.S. 413, 419, 31 S.Ct. 460, 55 L.Ed. 521. If the District Court was without jurisdiction, the Supreme Court would have said so. We conclude that the Norris-LaGuardia Act was not applicable.

We now proceed to discuss appellant's contention that in the absence of River Road employees the court had no jurisdiction to issue the preliminary injunction.

Formal parties, or proper parties, are those who have no interest in the controversy between the immediate litigants but have an interest in the subject matter, which may be conveniently settled in the suit and thereby prevent further litigation; they may be made parties or not, at the option of the plaintiff.

An indispensable party is one without whom the court can do nothing, or as was said in Barney v. Baltimore City, 73 U.S. 280, 284, 6 Wall. 280, 284, 18 L.Ed. 825, "[an indispensable party is one] whose interests in the subject-matter of the suit, and in the relief sought, are so bound up with that of the other parties, that their legal presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed."

In support of its contention appellant asserts that the work involved relates to outbound shipment of cattle from the Stock

Yards and bases its contention on its agreement with River Road under which River Road trainmen were working in 1920, which defines yard work as "The switching of all freight and passenger equipment operating exclusively within the switching limits." It insists that certain language of the Supreme Court in the Brotherhood case, supra, "leaves no room for doubt that the employees' interests involved in this suit are those of indispensable parties." On the other hand, appellees assert that the purpose of the instant suit was and is to protect the valuable operating rights of plaintiff carriers over the lines of the River Road, which were confirmed and perpetuated by the Commission's order of May 16, 1922. They point to the fact that the injunction runs against River Road and "its * * * officers, agents and representatives"; that an injunction not only binds parties defendant but also those identified with them in interest or subject to their control, and may issue against and be binding on the agents and employees of a party without the agents and representatives being made parties to the suit. In re Lennon, 166 U.S. 548, 17 S.Ct. 658, 41 L. Ed. 1110; Chase National Bank v. Norwalk, 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894; and Rule 65(d), Federal Rules of Civil Procedure, 28 U.S.C.A.

■ In the Brotherhood case, as we have already observed, the Supreme Court held that Brotherhood had an absolute right to intervene under § 17(11) of the Interstate Commerce Act and it is true that in its opinion the Supreme Court, 331 U.S. at page 530, 67 S.Ct. at page 1393, 91 L.Ed. 1646, said: "If the Commission order did require the River Road employees to forego operating the livestock cars, their contract rights with River Road were affected in a very real sense." Even so, the Supreme Court did not pass upon the question of indispensable parties or hold that River Road trainmen were indispensable parties. In our view the question decided was that River Road trainmen were entitled to intervene to protect their interests if they so elected.

In disposing of appellant's contention, we must not lose sight of the fact that the relief sought by appellees in this case, is a decree to restrain a violation of the Commission's order, and we must not forget that § 16(12) of the Interstate Commerce Act authorized the District Court to enforce obedience to the order of the Commission by injunction "to restrain such carrier, its officers, agents, or representatives, from further disobedience of such order, or to enjoin upon it or them obedience to the same." The injunction was issued conformably to Rule 65(d) of the Rules of Civil Procedure, and when we apply the rule that an injunction may issue against and be binding upon the employees of a party without the employees being made parties to the suit, it is clear that the principle of indispensable party cannot be invoked in this case.

Appellant also makes the point that when the District Court overruled its motion to vacate the preliminary injunction, it should have made findings of fact and conclusions of law. Rule 52(a) of the Rules of Civil Procedure; Bank of Madison v. Graber, 7 Cir., 158 F.2d 137; Dearborn National Casualty Co. v. Consumers Petroleum Co., 7 Cir., 164 F.2d 332, are cited.

We have examined those cases. Neither is in point. Here we have a case in which the court has denied a motion to dissolve an injunction theretofore issued. At the time the court issued the injunction it entered, in compliance with Rule 52(a), findings of fact and conclusions of law.

■ In our opinion Rule 52(a) applies in a case where the court grants or refuses an injunction. It does not apply on a motion to dissolve an injunction. We are fortified in this conclusion by what was said in Munoz v. Porto Rico Ry. Light & Power Co., 1 Cir., 83 F.2d 262. In that case the rule being considered was Equity Rule 70½ which in effect is the same as Rule 52(a). The court affirmed an order of the District Court denying a motion to vacate a preliminary injunction and held that Equity Rule 70½ did not apply to a motion to dissolve a preliminary injunction.

Another contention made by appellant is that it was entitled to a bond containing the conditions provided in the Norris-La-Guardia Act. Obviously, since we have held that the Norris-LaGuardia Act was

not applicable, it will not be necessary to discuss this contention.

Appellant in its brief has raised several other points, such as, that condition 3 of the 1922 Commission order should not be construed so as to prohibit the handling of outbound car movements on River Road lines by River Road employees; that the order appealed from is in conflict with § 5(2) (f) of Part I of the Interstate Commerce Act; and that the issuance of the preliminary injunction is contrary to the public interest. We do not discuss these contentions because the proper time to consider them is upon a trial upon the merits, where appellant may avail itself of any defense it may have.

Affirmed.