The TRIBUNE REVIEW PUBLISHING
COMPANY, a corporation, David W.
Mack, Robert Purdy, William Block,
Andrew Bernhard, Vince J o h n s o n,
James G. Klingensmith and Don Bin-
dyke, Plaintiffs,

and

P G Publishing Company, a corporation,
Intervening Plaintiff,

v.

Howard Bud THOMAS, Defendant.

Civ. A. 12033.

United States District Court
W. D. Pennsylvania.

Aug. 6, 1957.

Charles E. Kenworthey, Walter T. Mc-
Gough, and Gilbert J. Helwig, of Reed,
Smith, Shaw & McClay, Pittsburgh, Pa.,
Fred B. Trescher, and D. J. Snyder, Jr.,
of Kunkle & Trescher, Greensburg, Pa.,
for plaintiffs.

Paul K. McCormick, and·H. Reginald
Belden, Greensburg, Pa., for defendant.

GOURLEY, Chief Judge.

This is a proceeding to enjoin the en-
forcement of an order and rule of court
issued by the Courts of Common Pleas,

Quarter Sessions and Oyer and Terminer of Westmoreland County in the Commonwealth of Pennsylvania. The complement of each court is the same but under the law in Pennsylvania, by legislative and constitutional provision, three separate names or divisions are attached to each trial court.

Said rule of court now being attacked as violative of the Constitution of the United States, was to govern and control all persons in the same manner in the administration of the affairs and business of said County trial court.

The court rule was adopted on the eve of the trial of one John Wesley Wable, the so-called phantom killer of the turnpike. The killings on the turnpike had instilled terror into the minds of the people, and the apprehension of Wable in New Mexico, and his trial in Pennsylvania was the subject of widespread public interest.

I am appreciative of the fact that representatives of the press would naturally desire photographs of any aspect of the trial that could possibly be secured since the case was of such great and widespread natural interest.

When the action was originally presented and heard by the District Court, since the Supreme Court of Pennsylvania had not considered the validity of the promulgated State Court rule, the matter was stayed in the District Court, pending a determination of the question under state law. I was of the opinion that the Federal District Court had jurisdiction but since the trial courts in the Commonwealth of Pennsylvania secure their authority to act and administer their functions, inter alia, through rules promulgated by the Supreme Court of Pennsylvania, said court should first consider the question under state law. Tribune Review Publishing Co. v. Thomas, D.C., 120 F.Supp. 362.

After staying the proceeding in this court, action was filed in the Supreme Court of Pennsylvania to determine the validity of said rule of court. The Supreme Court of Pennsylvania dismissed the proceeding on the legal thesis that no justiciable issue existed, i. e., no violation of the rule was presented since no person had been deprived of a constitutional or other legal right. No person had violated the rule at the time action was instituted in the District Court, or Supreme Court of Pennsylvania. That to test the validity of a court rule or order, action must first be instituted in the court of its authorship. Tribune Review Publishing Co. Case, 379 Pa. 92, 113 A.2d 861.

Subsequent to the decision of the Supreme Court of Pennsylvania refusing an adjudication on the Westmoreland County Court Rule for the reason that no infraction or violation thereof had been committed, the rule in question was partially modified and amended by the Westmoreland County Court. Said amended rule was violated and was ultimately sustained by the Supreme Court of Pennsylvania and certiorari to the Supreme Court of the United States was refused. Mack v. Com. of Pennsylvania, 352 U.S. 1002, 77 S.Ct. 559, 1 L.Ed.2d 547.

Since the amended rule is the subject matter in question, no need exists to advert to the rule as originally adopted.

The representatives of the press complied with the rule of court during the trial of the phantom killer. He was convicted and the date for imposition of sentence became a matter of public knowledge and interest. On the date fixed for imposition of sentence the plaintiffs, who represent the press in one manner or the other, deliberately and intentionally violated the amended court rule.[1]

After the publication of said photographs, the plaintiffs in this proceeding were adjudged guilty of contempt of court, fined and subjected to jail

1. When the phantom killer was being escorted to the courtroom for sentence, he was manacled to the sheriff and while

said defendant and the sheriff were approaching the entrance to the courtroom and within forty feet thereof, the plain-

sentence by the Court of Westmoreland County, Pennsylvania. Hence, a final order then existed in the court of authorship of the rule as required by the Supreme Court of Pennsylvania. Tribune Review Publishing Co. Case, supra.

Appeal was taken to the Supreme Court of Pennsylvania from said contempt judgment, and the Supreme Court upheld the fines imposed, vacated the jail sentences, sustained the validity of said court rule, and concluded said rule did not conflict with the Constitution of the Commonwealth of Pennsylvania, the Constitution of the United States, and specifically did not deny to the offenders freedom of the press. Mack's Appeal, 386 Pa. 251, 126 A.2d 679.

Application for writ of certiorari was made to the Supreme Court of the United States, which was denied. Mack v. Com. of Pennsylvania, 352 U.S. 1002, 77 S.Ct. 559, 1 L.Ed.2d 547.

Since the parties have secured a ruling from the Supreme Court of Pennsylvania, and writ of certiorari was refused by the Supreme Court of the United States, I am satisfied the matter is now appropriately before this court for determination on the basis of Plaintiffs' Amended Complaint and the Westmoreland County Court Rule as amended.

It has been stipulated that all matters, exhibits and testimony presented at the original hearing together with the matters presented at final hearing shall be incorporated as the record of this proceeding.

Full, complete and exhaustive consideration has been given to the complete record, all exhibits, briefs and arguments.

The plaintiffs contend an injunction should be granted to restrain the enforcement of said rule [2] or in the alternative an order for judgment be issued, declaring said court rule invalid in that it denies freedom of the press in violation of the Constitution of the United States [3] and the Federal Civil Rights Statutes.[4]

tiffs in the instant proceeding, by pre-arrangement each with the others, took photographs prohibited by the court rule. Said photographs were procured or taken without the phantom killer's consent or the court's consent or knowledge. The photographs were taken in such a manner that the sheriff and his deputies were distracted by a decoy photographer. The following day said photographs were published in the newspapers of the plaintiff or those papers represented by the plaintiffs. It is not disputed that said acts were committed and that they were performed by agreement among all the parties.

2. Said rule of court provides:

"(a) No pictures or photographs shall be taken, immediately preceding or during sessions of this court or recesses between sessions, in any of the court rooms or at any place in the court house within forty feet of the entrance to any court room.

"(b) No court proceeding shall be broadcast or televised.

"(c) No pictures or photographs of any party to a civil or criminal action, juror or witness, shall be taken in the Law Library or in any office or other room of the court house, except with the knowledge and consent of the person or persons photographed.

"(d) No prisoner or inmate of the county jail shall be photographed in the jail or on his way to or from a session of court." Rule 6089 of the Courts of Westmoreland County, Pennsylvania.

3. "Amendment I—

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Constitution, U.S.C.A. Amendment I.

"Amendment XIV

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Constitution, U.S.C.A., Amendment XIV, Section 1.

4. "§ 1983. Civil action for deprivation of rights

Said rule of court approved by the State County Court governed and controlled the administration and affairs of all branches of said court. It was promulgated on the basis of authority given under the Constitution of Pennsylvania, legislative authorization and rules of the Supreme Court of Pennsylvania.

An evaluation of the court rule leads to the unquestioned conclusion that it was the intention of the court to restrict and bar—

(a) The taking of pictures or photographs immediately preceding or during sessions of said court or recesses between sessions, in any of the court rooms, by any person or at any place in the court house within forty feet of the entrance to any court room.

(b) The broadcasting or televising of court proceedings.

(c) The taking of photographs of any party to a civil or criminal action, juror or witness, in the law library or in any offices or other room of the court house, except with the knowledge and consent of the person or persons photographed.

(d) The photographing of any prisoner or inmate of the county jail in the jail or on his way to or from a session of court.

Reduced to most simple expression, the question posed presents the legal thesis that it is violative of the Constitution of the United States and the Federal Civil Rights Statutes for any State county court to promulgate a rule of court whereby representatives of the press or newspapers are denied the right to take photographs as they see fit anywhere in a court house, in that such action on the part of a State county court interferes with the freedom of the press.

The following questions are posed:

1. Does jurisdiction lie with the United States District Court?

2. Is the denial of certiorari by the United States Supreme Court from a judgment of the Supreme Court of a State res judicata upon the United States District Court?

3. Is the Westmoreland County Rule and the convictions of individual plaintiffs of contempt for its violation violative of plaintiffs' rights under the First and Fourteenth Amendments to the Constitution of the United States and/or the Federal Civil Rights Statutes?

#### Does Jurisdiction Lie with the United States District Court?

The defendant has challenged the jurisdiction of the court and its power to grant relief on the grounds that no substantial federal question is involved, and that the relief sought is a stay of state court proceedings contrary to the provisions of 28 U.S.C.A. § 2283.

■ Plaintiffs' claim for relief is founded upon the Fourteenth Amendment and First Amendment to the Federal Constitution and upon the Federal Civil Rights Act (42 U.S.C.A. § 1983). I am satisfied that jurisdiction in such cases is conferred upon this court by the provisions of 28 U.S.C.A. § 1343; Hague v. C. I. O., 307 U.S. 496, 59 S. Ct. 954, 83 L.Ed. 1423; Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Cooper v. Hutchinson, 3 Cir., 184 F.2d 119.

■ Defendant's legal thesis that the contested court order is proper and not unconstitutional goes to the merits of the controversy, and is not properly raised by challenging jurisdiction. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939.

■ I am satisfied that it is within the power of the Federal District Courts

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.A. § 1983.

to issue appropriate orders against State action to protect and safeguard rights given by the Constitution of the United States and/or the Federal Civil Rights Statutes where orders or action is taken by color of State authority to deny or interfere with said Federal rights. Jurisdiction is, therefore, properly laid in the Federal District Court for consideration and determination of the controversy at issue.

Is the Denial of Certiorari by the United States Supreme Court from a Judgment of the Supreme Court of a State Res Judicata upon the United States District Court?

I have given most studied consideration to defendants' position that denial of certiorari by the United States Supreme Court in the instant proceeding is res judicata of the issues raised.

Both in connection with habeas corpus petitions and other matters, the Supreme Court of the United States has many times for many years cautioned lawyers and judges against treating a denial of certiorari as an indication of the opinion of the Supreme Court on the merits of the case. Hamilton-Brown Shoe Co. v. Wolf Brothers & Co., 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629; State of Maryland v. Baltimore Radio Show, Inc., 338 U.S. 912, 70 S.Ct. 252, 254, 94 L.Ed. 562.

In the Hamilton-Brown case, a civil action to enjoin infringement of a trademark, the contention was made that the refusal of the United States Supreme Court to grant certiorari to review a decision of the Court of Appeals in an earlier appeal of the same case, operated to create the bar of res judicata, at least as to the issues which had then been before the Court of Appeals. The Supreme Court rejected this contention, asserting that this extraordinary writ is in no case equivalent to an affirmance of the decree that is sought to be reviewed.

State of Maryland v. Baltimore Radio Show, Inc., supra, involved as does the present case, an application to the United States Supreme Court to grant certiorari to a State court in connection with a conviction of criminal contempt. The writ was denied and, respecting the effect of the denial, Mr. Justice Frankfurter stated:

"The sole significance of such denial of a petition for writ of certiorari need not be elucidated to those versed in the Court's procedures. It simply means that fewer than four members of the Court deemed it desirable to review a decision of the lower court as a matter 'of sound judicial discretion.' Rule 38, paragraph 5, Rules of the Supreme Court, 28 U.S.C.A. A variety of considerations underlie denials of the writ, and as to the same petition different reasons may lead different Justices to the same result. This is especially true of petitions for review on writ of certiorari to a State court. Narrowly technical reasons may lead to denials. * * * A decision may satisfy all these technical requirements and yet may commend itself for review to fewer than four members of the Court. Pertinent considerations of judicial policy here come into play. A case may raise an important question but the record may be cloudy. It may be desirable to have different aspects of an issue further illumined by the lower courts. Wise adjudication has its own time for ripening."

* * * * * *

"Inasmuch, therefore, as all that a denial of a petition for a writ of certiorari means is that fewer than four members of the Court thought it should be granted, this Court has rigorously insisted that such a denial carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review. The Court has said this again and again; again

and again the admonition has to be repeated.

\* \* \* \* \* \*

"The issues considered by the Court of Appeals bear on some of the basic problems of a democratic society. Freedom of the press, properly conceived, is basic to our constitutional system. Safeguards for the fair administration of criminal justice are enshrined in our Bill of Rights. Respect for both of these indispensable elements of our constitutional system presents some of the most difficult and delicate problems for adjudication when they are before the Court for adjudication. \* \* \*

\* \* \* \* \* \*

"These are issues that this Court has not yet adjudicated. It is not to be supposed that by implication it means to adjudicate them by refusing to adjudicate."

Also see Sheppard v. State of Ohio, 352 U.S. 910, 77 S.Ct. 118, 1 L.Ed.2d 119.

Counsel for defendant, in support of their position that a denial of certiorari is res judicata upon this court, have placed great weight on the case of Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469.

Defendant cites as from the "majority opinion" the following sentence from the opinion of Mr. Justice Reed (344 U.S. at page 456, 73 S.Ct. at page 407):

"In fields other than habeas corpus with its unique opportunity for repetitious litigation, \* \* \* the denial would make the issues res judicata."

Counsel apparently failed to note the observation in an earlier part of Mr. Justice Reed's opinion, 344 U.S. at page 451, 73 S.Ct. at page 404, as follows:

"As other issues command a majority that upholds the judgments of the Court of Appeals, this opinion is that of the Court although it represents the minority view on the effect of our denial of certiorari. The position of the majority upon that point is expressed by the opinion of Mr. Justice Frankfurter."

Indeed, rather than supporting the proposition for which defendant contends, Brown v. Allen stands for the traditional view so forcefully stated so many times by Mr. Justice Frankfurter and restated by him in Brown v. Allen at page 497 of 344 U.S., at page 441 of 73 S.Ct.:

"The reasons why our denial of certiorari in the ordinary run of cases can be any number of things other than a decision on the merits are only multiplied by the circumstances of this class of petitions. And so we conclude that in habeas corpus cases, as in others, denial of certiorari cannot be interpreted as an 'expression of opinion on the merits.' "

In its most recent statement on the matter, the United States Supreme Court has reaffirmed this position in a case not involving habeas corpus: United States v. Shubert, 348 U.S. 222, 228, 75 S.Ct. 277, 281, 99 L.Ed. 279,

"But as the defendants admit a denial of certiorari does not constitute an expression on the merits. Brown v. Allen, 344 U.S. 443, 489–497, 73 S.Ct. 397, 437–441, 97 L.Ed. 469."

█ I conclude, therefore, that refusal of the United States Supreme Court to grant certiorari to the plaintiffs from the judgment of the Supreme Court of Pennsylvania upholding the validity of said County Court Rule in this action, in no way constitutes an adjudication upon the merits and is not res judicata to the issues raised.

Is the Westmoreland County Rule and the Convictions of Individual Plaintiffs of Contempt for Its Violation Violative of Plaintiffs' Rights under the Fourteenth and First Amendments to the Constitution of the United States and/or the Federal Civil Rights Statutes?

The constitutional and statute problem in this case involves two issues:

1. Whether the act of gathering news photographs at a court proceeding for later publication is within the ambit of constitutional protection under the Fourteenth and First Amendments of the Constitution of the United States and Federal Civil Rights Statutes.

2. Whether the abridgement imposed by the State of Pennsylvania, through the Westmoreland County Courts, is so related to some proper state purpose as to be a justifiable limitation on such freedom.

Freedom of the press is the keystone of free democracy, and has been forged in the blood and sweat of unyielding human sacrifice over the centuries. It is the culmination of man's struggle against tyranny, oppression and abuse. It became recognized as an inalienable right which was ordained and affirmed in the Constitution of the United States.

■ No man, however, would succumb to the fatal belief that such freedom is absolute and unlimited. Poulos v. State of New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105; Beauharnais v. People of State of Illinois, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919. For it is well recognized that the essential rights incorporated in the First and Fourteenth Amendments in some instances are subject to the elemental need for order without which the guarantees of civil rights would be a mockery. United Public Workers of America (C.I.O.) v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754.

■ When particular conduct is regulated in the interest of public order, and the regulation results in an indirect, conditional, partial abridgement, the duty of the courts is to determine which of these two conflicting interests demands the greater protection under the circumstances presented. American Communications Ass'n, C.I.O. v. Douds, 339 U.S. 382, 399, 70 S.Ct. 674, 94 L. Ed. 925.

■ It is not to be disputed that a court has power to adopt reasonable regulations for the conduct of its own business and for the promotion of the orderly and expeditious administration of justice. Clifford v. State of Ohio, 349 U.S. 929, 75 S.Ct. 771, 99 L.Ed. 1259.[5]

Such rules and regulations become unreasonable only when they interfere with the constitutional rights and privileges of others.

■ In this connection, the fact that petitioners are in the business of disseminating news gives them no special right or privilege not possessed by other members of the public. Mack Appeal, supra. The issue transcends the privileges of an select group or class but must be resolved in the light of its general application to the entire public and its simultaneous effect upon the dignity of the court and the orderly administration of justice.

Plaintiffs do not argue that they have a constitutional right to use standard flash cameras, or that a rule restricting the taking of pictures with such standard equipment would be unconstitutional. They argue only that since modern, unobtrusive, noiseless cameras were used, the rule is unconstitutional as to the taking of pictures with such modern equipment. Obviously the fact that some photographers and some newspapers possess improved photographic equipment, which is apt to create less disturbance than the cameras used by other photog-

5. The Supreme Court of the United States has promulgated the following Rule of Court, viz., Rule 53 of the Federal Rules of Criminal Procedure, Title 18 U.S. C.A.:

"The taking of photographs in the court room during the progress of judicial proceedings or radio broadcasting of judicial proceedings from the court room shall not be permitted by the court."

Rule 54 of the Federal Rules of Criminal Procedure makes the above quoted rule, inter alia, applicable to "all criminal proceedings in the United States district courts, which include the District Court for the Territory of Alaska and the District Court of the Virgin Islands; in the United States courts of appeals; and in the Supreme Court of the United States."

raphers and other newspapers, does not and should not give the plaintiffs special or superior rights and privileges over those who do not possess the more modern photographic equipment. The purchase of an infra-red camera, which does not require the use of flash bulbs, does not thereby vest in the purchaser a constitutional right to take pictures which he did not theretofore possess.

■ After most thorough and reflected judgment and evaluating all facts under existing law and the Constitution of the United States, I am of the belief that the court order as it relates to the ban on taking photographs within the court room is reasonable and proper and geared to achieve dignity and decorum in the court room, and is not an unreasonable impingement upon free speech under the First and Fourteenth Amendments of the Constitution of the United States, or violation of the Federal Civil Rights Statutes.

The very thought of members of the press and/or amateur photographers and others employing cameras, no matter how silent and concealed, to photograph different parties and witnesses to a court proceeding while the parties and the court are engrossed in the determination of matters of tremendous moment to the parties involved, is repugnant to the high standard of judicial decorum to which our courts are accustomed, and, indeed, may prove an opening wedge to a gradual deterioration of the judicial process.

The sancitity and inviolability of the court room is the keystone which supports and buttresses the great, massive arch of freedom, and to weaken this keystone is to invite real peril to our basic freedoms. In short, the greatest danger to freedom may well stem from those who seek the license and luxury of increased liberties at the expense of the processes which feed life blood to our free institutions.

■ It is a necessary concomitant to the integrity and independence of judicial tribunals, that they should have the power to enforce their own judgment as to what conduct is incompatible with the proper and orderly administration of justice. The additional provisions of the Westmoreland County rule is proper so long as it bears a reasonable relation to the maintenance of the dignity of the court and is consistent with the expeditious and orderly administration of justice. It would appear reasonable that a court's power to restrict acts in the vicinity of the court would geographically extend at least as far as those which could punish by summary contempt proceedings. Ex parte Savin, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed 150; Nye v. United States, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172. Such power extends to misbehavior committed in the vicinity of the court, to wit, "near in the geographical sense." I am satisfied that the approaches, ingresses and egresses and the entire court house during the course of a judicial procedure become an integral part and is inextricably woven into the decorum and efficacy of the judicial process, and to such extent is "near in the geographical sense," being in the vicinity of the court. Justice would indeed become radically compromised, if not a mockery, were an accused subjected to debasement and embarrassment while in the confines of the court house engaged in entering and departing in the course of trial.

But even if I were in error to conclude that the parts of the court house or jail of Westmoreland County should not be encompassed within the restriction of the rule, nevertheless, I am cognizant that an honest difference of opinion could exist among reasonable men.

Since the rule was promulgated under color of State law, and has been upheld by the Supreme Court of the Commonwealth of Pennsylvania, it would be an arbitrary act on the part of this court to strike down such restriction unless it was capricious and unreasonable. The fact that reasonable man could differ as to its propriety and necessity, in my judgment, places said restriction within the orbit of reasonableness and justifiability.

■ The Westmoreland County Court, as are all courts, has a duty to protect the right of an accused's privacy. 77 C.J.S. Right of Privacy § 1, page 397; Rest. of Law of Torts, Section 867; Leverton v. Curtis Pub. Co., 3 Cir., 192 F.2d 974; Waring v. W. D. A. S. Broadcasting Station, Inc., 327 Pa. 433, 194 A. 631.

■ It cannot be doubted that a prisoner is powerless to do so by any means within his control, and in such case the court has an inherent duty to use all reasonable means to safeguard that right. Undoubtedly, such right of privacy is to be subordinated at least to the extent of permitting a limited scrutiny, to the public interest in obtaining information, where the subject of inquiry of a person has achieved or has had thrust upon him the questionable and indefinable status of a public figure. Sidis v. F-R Pub. Corp., 2 Cir., 113 F. 2d 806; Leverton v. Curtis Pub. Co., 3 Cir., supra; Rest. of Law of Torts, Section 867. Yet, at the same time we must take cognizance of the fact that the constitutional right of the accused to a public trial is a privilege intended for his benefit. It does not entitle the press or the public to take advantage of his involuntary exposure at the bar of justice to employ photographic means to picture his plight in the toils of the law either while in jail, going or coming from court or while actually in the court room.

I must conclude, therefore, that the court has the right to forbid the use of cameras or the taking of photographs in the court room or in the vicinity of the court room during the progress of a trial. If such a right should yield to an asserted privilege of the press, the authority and dignity of the courts would be seriously impaired. It is essential to the integrity and independence of judicial tribunals that they shall have the power to enforce their own judgment as to what conduct is incompatible with the proper and orderly course of the administration of their duties. If the discretion of a judicial tribunal should be subordinated to that of the desires of the press or public in regard to the use of photographic instruments in the court room, adjacent to or in the vicinity of the facilities commonly used by the court in the administration of its duties, it would be difficult to limit the further reduction to which the authority of the court would be exposed.

Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides, inter alia, in all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon.

A permanent injunction, when issues of fact determine whether or not the permanent injunction should be granted, comes within the purview of Rule 52(a) of the Federal Rules of Civil Procedure. Hook v. Hook & Ackerman, Inc., 3 Cir., 213 F.2d 122.

■ It would appear to me that when an application for permanent injunction is refused, when issues of fact are the basis for denying the application for a permanent injunction, findings of fact and conclusions of law should be entered. Baltimore & O. R. Co. v. Chicago River & Indiana R. Co., 7 Cir., 170 F.2d 654.

In this proceeding the facts are not in dispute and the determination of the question is resolved solely on questions of law.

Findings of Fact and Conclusions of Law have not been submitted to the court by the parties or their counsel, although the court has had the benefit of most exhaustive and thorough briefs. However, I believe strict compliance should be required as to the provisions of Rule 52(a) of the Federal Rules of Civil Procedure.

The application for permanent injunction is refused together with all other prayers for relief as requested in plaintiffs' amended complaint, and the defendants are directed to submit Findings of Fact and Conclusions of Law to the court in accordance and consistent with

the provisions of this opinion on or before the 26th day of August, 1957, together with appropriate order for judgment.

An appropriate order is entered.