**Burke v. Independence Blue Cross**

458

*Joseph Caldwell Leonard* and *David G. Gates*, for plaintiff.

*Gerald J. Dugan,* for defendant.

FOX, *J.,* July 19, 2011—Plaintiff has appealed the decision of an IPRO, an external review agency appointed

by the Pennsylvania Department of Insurance, which found that applied behavior analysis services rendered in a school setting are not covered under the policy with Independence Blue Cross.[1]

## FACTUAL and PROCEDURAL HISTORY

The parties agree on the relevant facts. Anthony Burke, a minor child of John Burke, suffers from an autism spectrum disorder. He had been receiving Applied Behavior Analysis (ABA) services in the home to treat his condition before August 25, 2009. On that date, the plaintiff's father, John Burke, requested that Independence Blue Cross (IBC) pay for similar ABA services at Anthony's elementary school, a local Catholic parish school. Magellan Health Services, IBC's administrator for mental health and substance abuse coverage, denied this request. In denying coverage, Magellan pointed to a provision in the Health Plan Policy which stated that "no benefits will be provided for services...[f]or care in a school." Burke appealed this decision and it was eventually submitted to IPRO, an independent "Certified Review Agency," which upheld Magellan's denial. At the time his claim came before IPRO, Anthony was six years old.

On January 1, 2010, Act 62 came in to effect, codified in 40 P.S. § 764h(a). Act 62 provides that "[a] health

---

1. Initially this matter was filed by plaintiff as a complaint for breach of contract to which IBC filed responsive pleadings. Thereafter, plaintiff filed for judgment on the Pleadings. Pursuant to a conference with counsel it was agreed that this was an appeal pursuant to 40 P.S. 764h(k)(2) and was presented to the court as an agency appeal. The parties submitted a Stipulation, the court received the certified record, briefs were submitted, and the court heard oral argument.

insurance policy...shall provide to covered individuals... for the treatment of autism spectrum disorders." "Treatment" is defined by the Act to include "rehabilitative care," which, in turn, is defined to "include applied behavioral analysis." 40 P.S. 764h(f)(15); 40 P.S. 764h(f)(12). Act 62 further provides that "[c]overage under this section shall be subject to...general exclusions...to the same extent as other medical services or programs covered by the policy are subject to these provisions." 40 P.S. § 764h(c).

On July 1, 2010, Mr. Burke's health plan converted to a self funded policy of a sort not subject to the requirements of Act 62. The parties agree that IBC cannot be liable for a failure to provide coverage either before January 1, 2010 or after July 1, 2010. The question before this court is only whether Act 62 required IBC to cover Anthony's "in school" ABA services from the period between January 1st and July 1st of 2010. The parties submitted to the court the following stipulation of facts:

1. The Independence Blue Cross policy which provided coverage to the plaintiff until July 1, 2010 contained the following exclusion, which applies to all services under the policy: "Except as specifically provided in this contract, no benefits will be provided for services, supplies or charges:

a. For care in a nursing home, home for the aged, convalescent home, school, institution for retarded children, custodial care in a skilled nursing facility"

2. On January 1, 2010, Act 62 (40 P.S. §764h, "Autism Spectrum Disorders Coverage") became

effective as it relates to the plaintiff, January 1st being the anniversary date of the Independence Blue Cross policy in question.

3.   Effective July 1, 2010, the coverage provided both Suzanne M. Burke and her husband, John T. Burke, converted from fully funded insurance policies to self funded healthcare coverage.

4.   Act 62 is inapplicable to such self funded healthcare programs.

5.   Independence Blue Cross has no responsibility to provide insurance coverage, pursuant to the quoted exclusion in its policy, for any "in school" services to plaintiff.

6.   The only issue before this court going forward is whether or not Act 62 voids the "place of service" exclusion in the Independence Blue Cross policy for the period of January 1, 2010 through July 1, 2010.

## DISCUSSION

The question is essentially one of statutory construction. IBC believes that the term in the contract specifying that "no benefits will be provided for services...[f]or care in a school" is the kind of "general exclusion" permitted by the Act under § 764h(c). Burke contends that because ABA services is specifically mentioned in § 764h(a) (through incorporation of subsections (f)(15) and (f) (12)) as a service which must be provided, it cannot be subject to the "exemption" language. While each of these interpretations is colorable, for the reasons which

follow, the Burke interpretation is more consonant with the principles of statutory construction and the intent of the Legislature.

### IBC's Interpretation

IBC by exclusion contained in its policies, does not provide treatment or services for any illness or condition in schools, nursing homes, convalescent homes, institutions for retarded children, or for individuals in custodial care in a nursing facility. It excludes services provided in these settings because it is unable to monitor the services as they are being delivered; this exclusion, according to IBC, is therefore a form of quality control. IBC argues that because it does not provide these services for any sufferers of any condition, this policy is a general exemption that relieves them from providing ABA service "in schools" under § 764h(c).

In support of this position, IBC draws attention to the allegedly unambiguous meaning of the language itself. IBC notes that Pennsylvania's rules for statutory construction, as codified in 1 Pa. C.S.A. § 1921(b), provide that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." IBC further argues that, since the words of § 764h(c) clearly and unambiguously permit IBC to exclude "in school" services from coverage, this court ought not to engage in statutory interpretation or investigate the legislative intent of the statute. This argument fails however, because Act 62 is not clear and unambiguous.

§ 764h(c) does not exist in a vacuum. While it does

facially state that insurers may opt not to provide coverage pursuant to a "general exclusion," § 764(a) of the same law states that insurers must cover ABA services. Because a facial reading of these two provisions would cause them to conflict with one another, there is an ambiguity in the statute as a whole even though there may not be one inherent in the text of § 764h(c) when viewed in isolation. In fact, the ambiguity caused by the tension between these two provisions is notable enough that the Pennsylvania Insurance Department published a notice specifically to address this conflict. 39 Pa.B. 1927 (2009). Beyond the tension between these two provisions, the very phrase "general exclusions" is susceptible enough to interpretation that it creates some ambiguity in and of itself. The existence of these ambiguities mean that the more apt rule of statutory construction is 1 Pa. C.S.A. § 1921(a), which provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."

IBC also urges that § 764h(c) exempts it from covering ABA services "in schools" because of existing federal mandates under the Individuals with Disabilities Education Act (IDEA) and analogous Pennsylvania statutes for autism treatment services "in school". IBC makes three arguments in support of this position: (1) that the existence of other statutes requiring ABA service be provided "in schools", means that the legislature did not intend for Act 62 to require coverage of the service by insurance carriers; (2) that, as a matter of policy or equity, the fact that the plaintiff and others in his position have access to such services would make insurance coverage unnecessary and

duplicative; and (3) that IDEA may federally preempt Act 62, if Act 62 is interpreted to require insurance carriers to cover ABA services "in school". Even assuming that the ABA services provided pursuant to IDEA are fully coextensive with and identical to those provided for under Act 62,[2] none of these arguments are persuasive.

There is no compelling reason to believe that the General Assembly drafted Act 62 with the intention of ensuring autism treatment only in situations in which that treatment was previously unavailable. Legislatures commonly create overlapping statutes as a way to ensure some particular result. A rule of statutory construction that presumed that every statutory scheme was sole lord and sovereign over the facts it was designed to address would require drastic reimagining of, for example, the Rehabilitation Act and the Americans with Disabilities Act, or of the Clean Water Act; or the Resource Conservation and Recovery Act and the Comprehensive Environmental Response, Compensation and Liability Act of 1980. These situations involve multiple statutory schemes that overlap to fulfill legislative purposes, and courts are comfortable with these statutes providing somewhat duplicative services or protections. In this case, there are in fact very good reasons why the General Assembly might have chosen to adopt this kind of overlapping protection. While requiring insurance carriers to cover ABA in schools might seem to obviate the need for state-funded services, it only does so for those children who are, in fact, insured. By creating overlapping statutes requiring the provision of services,

---

2. This point is in doubt, given plaintiff's counsel's argument in hearing transcript vol. 1 at 44:16-45:12.

the legislature may thus have chosen to pass some of the cost of ABA services to insurance carriers (and by extension insurance policy holders) while still maintaining state sponsored services for uninsured children. For these reasons, it is easily imaginable that the General Assembly intended for both IDEA-associated statutes and Act 62 to provide overlapping protections by operating in concert with one another.

Neither is there a compelling policy or equity rationale for interpreting Act 62 as not requiring ABA services in schools. IBC implies that it would be unfair to impose upon it the cost of covering ABA, since the Burke family could have accessed those services through IDEA. Even assuming that the Burkes could have gotten ABA services through IDEA, this point does not speak to the correct interpretation of Act 62 or to the propriety of holding IBC liable. The possibility that the Burkes could have gotten the same services elsewhere is rather a mitigation of damages issue that IBC can raise at that stage of the proceedings. The gravamen of the Burke's claim is that IBC agreed to provide coverage and Act 62 removed any ability to exclude this particular type of treatment regardless of the setting. The resolution of that issue does not depend on whether or not the Burkes could have obtained that service elsewhere, such as a different school or at home. Even if IBC's coverage would have been duplicative or unnecessary, it is still liable if it agreed to provide such coverage.

The argument that Act 62 is federally preempted to the extent that it purports to require insurance carriers to cover ABA services "in school" also fails. It is very doubtful that

a federal preemption argument would be successful here, or even colorable. IBC argues that Act 62 would be subject to conflict preemption because it would "work to displace or override" IDEA. This is unlikely. Conflict preemption exists when "compliance with both laws is impossible or if the state law frustrates the objectives of the federal law," and it is difficult to imagine that this standard could be met here. *Malik v. Lehigh Valley Balloon Festival,* 20 Pa. D. & C.4th 41, 46 (Pa. C.P. 1993) (citing *Boyle v. United Technologies Corp.,* 487 U.S. 500, 507-08 (1988)).

*Burke's Interpretation*

Burke argues that this court should Interpret Act 62 as imposing at least a minimum level of coverage - specifically, a level of coverage which includes those treatments which are specifically listed in the statute. The "general exclusions" provision, under this reading, would allow insurance carriers to exclude treatments and services not specifically articulated by the statute, but only to "the same extent as other medical services covered by the policy." 40 P.S. § 764h(c). The Insurance Department urges an identical understanding of Act 62, asserting that the Act requires coverage of medically necessary ABA services "irrespective of whether [ABA service is] otherwise excluded by the policy." 39 Pa.B. 1927. This reading of the law would turn § 764h(c) into essentially an antidiscrimination provision requiring that if an insurance carrier chooses to cover a type of treatment or service for any other condition, then it must cover that treatment or service for autism spectrum disorders as well.

In support of this argument, Burke cites to 1 Pa.C.S. §

1921(c), which specified that "the intention of the General Assembly *may* be ascertained by considering, among other matters...administrative interpretations of [a given] statute [emphasis added]." It is true that the relevant administrative interpretation of the statute supports Burke's argument. However, this court cannot simply end its inquiry with that. 1 Pa.C.S. § 1921(c) does not require this court show any deference to the Insurance Department's interpretation; rather, it simply suggests that such an interpretation may be relevant to the court's inquiry. Therefore, the Insurance Department's interpretation, as articulated in 39 Pa.B. 1921 and in its amicus brief, is to be given weight but cannot control.

This court finds that the better interpretation of Act 62 is the one urged by Burke and the Insurance Department. This is because that interpretation best comports with the normal canons of statutory construction, avoids the possible neutering of the Act, and gives weight to the Insurance Department's interpretation of the General Assembly's intent.

There is a principle of statutory interpretation -- classically formulated as generalia specialibus non derogant, or "the general does not detract from the specific" -- that a more specific rule or provision will control a later and more general rule or provision where both apply to the same facts. This canon was explained by the United States Supreme court thusly:

"The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute

in general terms or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all."

*Rodgers v. U.S.*, 185 U.S. 83, 88 (1902) (quoting Theodore Sedgwick, A TREATISE ON THE RULES WHICH GOVERN THE INTERPRETATION AND APPLICATION OF STATUTORY AND CONSTITUTIONAL LAW at 98 (1857)).

Act 62 contains just such specific and general provisions. § 764h(a) incorporates by reference a highly detailed definition of "treatment" as well as a specific list of treatments that insurance carriers must cover, including not only ABA services but also speech language pathology, occupational therapy and a number of other services. It is clear from the specificity of this provision that "the mind of the legislator [was] turned to the details of the subject," in just such a way as to justify the application of the traditional rule. *Id.* By contrast, § 764h(c) does not define "general exclusions" or list any types of services or treatments, such as services in schools, that may be excluded. Thus, by traditional rule of generalia specialibus non derogant, the best reading of Act 62 is that § 764h(a) controls and limits the operation of § 764h(c) rather than the reverse.

This reading of Act 62 is supported by 1 Pa.C.S. § 1921(a), which provides that "every statute shall be

construed, if possible, to give effect to call its provisions." Act 62 specifically defines applied behavioral analysis at 40 P.S. §764h(f)(1) as "the design, implementation and evaluation of environmental modifications, using behavioral stimuli and consequences, to produce socially significant improvement in human behavior or to prevent loss of attained skills or function, including the use of direct observation, measurement and functional analysis of the relations between environment and behavior." IBC's interpretation of Act 62 would allow it to continue its exclusions of this service when provided "in school." The delivery of ABA services in a school environment has been proven effective as a treatment for autism spectrum disorder. Thus, even though Burke is covered for ABA outside of the school setting, IBC's interpretation would render meaningless the mandate that insurance carriers cover "the treatment of autism spectrum disorders."

Finally, the Insurance Department's interpretation of the statute carries some weight. As noted above, the Insurance Department's interpretation does not control this court nor does it absolve this court of the responsibility to construe Act 62 for itself. However, as provided in 1 Pa.C.S. § 1921(c), the Department's interpretation is relevant to the intent of the General Assembly, insofar as this is true, the Department's interpretation also mitigates in favor of a finding for Burke.

This court finds that the most correct interpretation of Act 62 is to require IBC to provide ABA service "in school" despite the "general exclusions" exception in §764h(c). This interpretation is most consistent with the principle of statutory construction that the specific

provision controls the general provision.

And now, July 19, 2011, upon consideration of the appeal from the decision of IPRO, the response thereto, a review of the certified record, the briefs submitted by the parties and after oral argument, it is hereby ordered and decreed that the appeal is granted and the decision of IPRO is reversed. It is further ordered that defendant Independence Blue Cross take action consistent with this decision.